UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNESOTA CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC., NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC., and LAKETOWN ELECTRIC CORPORATION | Court File No.<br><br>**COMPLAINT** |
| Plaintiffs, | |
| v. | |
| KEITH ELLISON, in his official capacity as Attorney General of Minnesota, NICOLE BLISSENBACH, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry, | |
| Defendants. | |

## **COMPLAINT**

1.  Plaintiffs Minnesota Chapter of Associated Builders and Contractors, Inc. ("MNABC"), and National Federation of Independent Business, Inc. ("NFIB") (collectively, "Plaintiff Associations") invoke the federal constitutional and statutory rights of their members, and seek a judgment (1) declaring Minnesota Statute §181.531 is unconstitutional and preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151, *et seq.*, and (2) enjoining Defendants' enforcement of this statutory provision against their members.

2.  Plaintiff Laketown Electric Corporation ("Laketown Electric") also invokes its federal constitutional and statutory rights and seeks a judgment (1) declaring Minnesota Statute § 181.531 is unconstitutional and preempted by the NLRA, and (2) enjoining Defendants' enforcement of this statutory provision against it.

3.  In May 2023, the Minnesota Legislature enacted Minnesota Statute §181.531 ("Section 181.531"). Pursuant to Section 181.531, effective August 1, 2023, Minnesota employers are now subject to civil liability when they exercise their federal constitutional and statutory rights

to talk to employees about political issues, including "the decision to join or support any . . . labor organization".

4. Section 181.531 violates the First and Fourteenth Amendments to the United States Constitution by discriminating against employers' viewpoints on political matters, by regulating the content of employers' communications with their employees, and by chilling and prohibiting employer speech.

5. Section 181.531 is also preempted by the NLRA. For over seventy years, and consistent with the First Amendment, the NLRA has protected the right of employers to express their views on unionization to their employees. *See* 29 U.S.C. § 158(c)("Section 8(c)"). The NLRA also prohibits statements and actions, including unlawful threats, which interfere with, restrain, or coerce employees in the exercise of their rights protected by the NLRA. *See* NLRA Sections 8(a)(l), 8(b)(l)(A), 29 U.S.C. §§ 158(a)(l), 158(b)(l)(A). Section 181.531 intrudes into this subject matter where Minnesota and other states have no power to regulate.

6. This Court can and should vindicate the federal constitutional rights of Plaintiff Laketown Electric and the Plaintiff Associations' members to engage in protected speech with their employees and also end Minnesota's intrusion into an area preempted and exclusively regulated by the NLRA.

**JURISDICTION AND VENUE**

7. Plaintiffs bring this cause of action under 42 U.S.C. § 1983, for the violation of their rights and the rights of their members, secured by the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over these federal claims under 28 U.S.C. §§ 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

8. Plaintiff Laketown Electric has standing to bring this suit on behalf of itself and Plaintiff Associations also have associational standing to bring this suit on behalf of their various members. Plaintiff Associations' members are directly and adversely affected by Section 181.531 and accordingly have standing to sue in their own right. Section 181.531 is at odds with each Plaintiff Association's policy objectives, and challenging Section 181.531 is germane to each Plaintiff Association's purposes. Neither the claims asserted nor the relief requested requires individual members to participate in the suit.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The District of Minnesota is where a substantial part of the events giving rise to Plaintiffs' claims have occurred, are now occurring, and will occur in the future if not curtailed. Plaintiff Laketown Electric and Plaintiff Associations' employer members are situated in this District and are and will continue to be adversely affected by the irreparable harms sought to be remedied and prevented by this Court's action upon this Complaint.

## **NATURE OF ACTION**

10. Plaintiffs seek declaratory relief that the provisions of Minnesota Statute §181.531 are unconstitutional and preempted by the National Labor Relations Act, 29 U.S.C. § 151, *et seq*. Plaintiffs seek injunctive relief, enjoining Defendants' enforcement of Section 181.531, including against employers who discharge or discipline employees for refusing to attend employer-sponsored meetings, or refusing to listen to employer speech or view employers communications, in which the employers intend to communicate their opinions on political matters, including the decision to join, support or oppose a labor organization.

**PARTIES**

11.     Plaintiff Minnesota Chapter of Associated Builders and Contractors, Inc. ("MNABC") is a statewide professional trade organization representing the interests of 330 construction-related firms. MNABC brings this lawsuit to further its mission and to vindicate the constitutional rights of affected members.  MNABC's 330 plus employer members and their 22,000 employees are covered by both the NLRA and Section 181.531 and are frequently targeted by union organizing efforts, creating the need to communicate lawfully with their employees on this important topic.  MNABC's employer members are chilled by Section 181.531 in their exercise of free speech rights toward their own employees.

12.     Plaintiff National Federation of Independent Business, Inc. ("NFIB") is the nation's leading small business association. NFIB's mission is to promote and protect the right of its members to own, operate, and grow their businesses. NFIB represents, in Washington, D.C., and all fifty state capitals, the interests of its members. Its membership spans the spectrum of business operations, ranging from sole proprietor enterprises to firms with hundreds of employees.  NFIB's membership includes nearly 300,000 small businesses nationwide, and just over 10,000 Minnesota small businesses.  NFIB's Minnesota-based employer members are chilled by Section 181.531 in their exercise of free speech rights towards their own employees.

13.     Plaintiff Laketown Electric is a family-owned business that has served Minnesotans since 1975. It is one of the fastest growing companies in Minnesota, is a member of MNABC and is frequently targeted by union organizing efforts, creating the need to communicate lawfully with its employees on this important topic.  Laketown Electric is also chilled by Section 181.531 in its exercise of free speech rights toward its own employees.

14. Section 181.531 has and will injure Plaintiff Laketown Electric and the Plaintiff Associations' members in Minnesota. Plaintiff Laketown Electric and a number of Plaintiff Associations' employer members have conducted or engaged in, and plan to conduct or engage in, employer sponsored meetings, speech, or other communications having the primary purpose of communicating the employer's opinion concerning political matters as defined in the law, which include, among other things, the decision to join, support or oppose a labor organization. These employers conduct meetings, engage in speech, and issue communications addressing many other topics in the normal course of business. These topics include important employment matters and other critical issues relating to their companies that Section 181.531 defines as ''political matters,'' such as but not limited to proposals to change legislation, proposals to change regulations, proposals to change public policy, and whether to join a political, civic, community, fraternal or labor organization. For this reason, employees are expected and required to attend, listen to, and review these types of employer-sponsored meetings, speech, and communications, and the failure to do could subject employees to potential discipline or discharge.

15. For example, a number of MNABC's members, including Laketown Electric, are affected by Section 181.531. A number of MNABC's members have conducted or engaged in, or plan to conduct or engage in, employer-sponsored meetings, speech, or other communications having the primary purpose of communicating the employer's opinion concerning political matters as defined in the law, which may include (among other things) the decision to join or support any political party or political, civic, community, fraternal, or labor organization. These members conduct meetings, engage in speech, and issue communications addressing many topics in the normal course of business, including employment matters and other critical issues relating to the company (including what Section 181.531 defines as "political matters"). As an example, during

these meetings, MNABC members have communicated or plan to communicate its opposition to political positions taken by labor organizations, where those positions negatively impact the financial well-being of the state and opportunities for residents, and the negative implications of expanding outdated, costly, and inflexible union practices to non-unionized private-sector workplaces.  For this reason, employees are expected and required to attend, listen to, and review these types of employer-sponsored meetings, speech, and communications, and the failure to do so would subject employees to potential discipline... MNABC believes that Section 181.531 exposes MNABC member companies to financial liability, costs, and attorneys' fees based on any meetings and communications concerning political issues that MNABC member companies conduct in the future. Based on the risk of incurring liability, costs, and attorneys' fees, MNABC believes its member companies must either refrain from future meetings and communications concerning political issues or go forward with meetings and communications while exposing themselves to legal risk, including liability, costs, and attorneys' fees.  In sum, MNABC member companies are chilled in expressing their viewpoints in light of Section 181.531.

16.     Similarly, NFIB members are affected by Section 181.531. Some of NFIB's members have conducted or engaged in, or plan to conduct or engage in, employer-sponsored meetings, speech, or other communications having the primary purpose of communicating the employer's opinion concerning political matters as defined in the law, which may include (among other things) the decision to join or support any political party or political, civic, community, fraternal, or labor organization. These employers conduct meetings, engage in speech, and issue communications addressing many topics in the normal course of business, including employment matters and other critical issues relating to the company (including what Section 181.531 defines as "political matters"). For this reason, employees are expected and required to attend, listen to,

6

and review these types of employer-sponsored meetings, speech, and communications, and the failure to do so would subject employees to potential discipline. NFIB believes that Section 181.531 exposes NFIB member companies to financial liability, costs, and attorneys' fees based on any meetings and communications concerning political matters that NFIB member companies conduct in the future. Based on the risk of incurring liability, costs, and attorneys' fees, NFIB believes its member companies must either refrain from future meetings and communications concerning political matters or go forward with meetings and communications while exposing themselves to legal risk, including liability, costs, and attorneys' fees. In sum, NFIB member companies are chilled in expressing their viewpoints in light of Section 181.531.

17. Laketown Electric is also affected by Section 181.531. As an employer, nonunion contractor and member of MNABC, Laketown Electric has held meetings with and provided written and other communications to employees about "political issues" when faced with union organizing efforts. Laketown Electric has required employees, including those who are not engaged in political advocacy, to attend these meetings. The purpose of some of these meetings and communications was to communicate Laketown Electric's position and opinions on political matters. Laketown Electric believes Section 181.531 exposes it to financial liability, costs, and attorneys' fees based on any meetings and communications concerning political issues that Laketown Electric conducts in the future. Based on the risk of incurring liability, costs, and attorneys' fees, Laketown Electric believes it must either refrain from future meetings and communications concerning political issues or go forward with meetings and communications while exposing themselves to legal risk, including liability, costs, and attorneys' fees. In sum, Laketown Electric is chilled in expressing its viewpoints in light of Section 181.531.

18. Keith Ellison is the Attorney General of Minnesota. The Attorney General is empowered to enforce Chapter 181 of the Minnesota Statutes under the powers granted to him by Minnesota Statute 8.31. *See* Minn. Stat. § 181.1721.

19. Nicole Blissenbach is the Commissioner of the Minnesota Department of Labor and Industry ("Commissioner"). The Commissioner is empowered to enter and inspect places of employment and investigate facts, conditions, practices or matters as appropriate to enforce the laws within the Commissioner's jurisdiction and to carry out the purposes of Chapter 181. *See* Minn. Stats. §§ 175.20 and 181.1721.

### FACTS

20. In accordance with the NLRA and the First and Fourteenth Amendments to the United States Constitution, employers have the right to communicate with their employees about the employers' viewpoints on politics, unionization, and other labor issues, as well as the right to require employees to attend meetings or otherwise view communications about those issues.

21. On May 16 and 17, 2023, the Minnesota State House and Senate, respectively, considered and passed Senate File 3035 ("SF 3035") which, among other things, provided for the adoption of Section 181.531. Tim Walz, the Governor of the State of Minnesota, signed SF 3035 into law on May 24, 2023 and it took effect on August 1, 2023.

22. Section 181.531, subd. 1, provides that: "An employer or the employer's agent, representative, or designee must not discharge, discipline, or otherwise penalize or threaten to discharge, discipline, or otherwise penalize or take any adverse employment action against an employee: (1) because the employee declines to attend or participate in an employer-sponsored meeting or declines to receive or listen to communications from the employer or the agent, representative, or designee of the employer if the meeting or communication is to communicate

the opinion of the employer about religious or political matters; (2) as a means of inducing an employee to attend or participate in meetings or receive or listen to communications described in clause (1); or (3) because the employee, or a person acting on behalf of the employee, makes a good-faith report, orally or in writing, of a violation or a suspected violation of this section."

23. Section 181.531, subd. 5, defines "political matters" as: "matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civic, community, fraternal, or labor organization…."

24. Aggrieved employees may bring a civil action to enforce Section 181.531, and may be awarded injunctive relief, reinstatement, back pay and reestablishment of employee benefits, attorneys' fees and costs, and any other appropriate relief deemed necessary by the court.

25. Defendants have the authority to enforce Section 181.531.

26. Under 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

27. Under 28 U.S.C. § 2201, "In a case of actual controversy within its jurisdiction," this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

28. Section 181.531 violates the constitutional and statutory rights of Minnesota's employers, including Plaintiff Laketown Electric and the Plaintiff Associations' members.

9

Without a declaratory judgment and an injunction against enforcement of Section 181.531, Defendants will deprive Plaintiff Laketown Electric and the Plaintiff Associations' members of their federal rights.

### COUNT I – SECTION 181.531 VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS

29. Section 181.531 violates the rights of speech and assembly guaranteed under the First and Fourteenth Amendments to the United States Constitution to Plaintiff Laketown Electric and the Plaintiff Associations' members.

30. Section 181.531 threatens employers with civil liability for speaking with their employees about a range of important issues, like whether certain candidates for office are likely to be good or bad for the employer or whether to support or oppose legislation concerning a variety of issues impacting the employer and employees, including public health and safety, economic items, racial equality and other employment-related legislation, taxes, and more.

31. By its express terms, Section 181.531 regulates speech on "matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civic, community, fraternal, or labor organization." Minn. Stat. § 181.531, subd. 5. Because ''the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue," Section 181.531 violates Plaintiff Laketown Electric's and Plaintiff Associations members' First Amendment rights. *First Nat'l Bank/Boston v. Bellotti,* 435 U.S. 765, 776 (1978).

32. Section 181.531's regulation of employer speech is a form of prohibited content-based discrimination. Section 181.531 regulates speech on political matters - a subject matter that

is entitled to the highest form of protection. Although some content-based restrictions pass constitutional muster, political speech is at the core of what the First Amendment protects.

33. Section 181.531's regulation of employer speech on labor issues, like its restriction of speech on political matters in general, is a form of prohibited content-based discrimination.

34. Section 181.531's regulation of employer speech about "political matters," including "the decision to join or support any . . . labor organization," is also a form of prohibited viewpoint-based discrimination.  Section 181.531 singles out employers and prevents them from effectively sharing their opinions on political matters of public concern, including opinions against unionization, and from explaining the effects unionization could have on the employers' business.

35. Section 181.531 prevents employers from sharing true facts with employees about the costs of unionization, such as employees' need to pay dues for representation, unions' interference with employer-employee relationships, unions' prioritization of the collective over the individual employees, and the financial impacts on employers. As a result, employees will be deprived of complete information and be unable to make informed choices about whether to unionize.

36. The State of Minnesota has no compelling interest in protecting employees from hearing their employers' opinions on any issues, let alone political and labor issues. The State of Minnesota also has no compelling interest in depriving employees of factual information related to political and labor issues.

37. Section 181.531 is overbroad, discriminatory, and chills employers' speech and assembly rights guaranteed by the First and Fourteenth Amendments. These unconstitutional flaws are magnified by the statute's vagueness and extreme breadth.  Section 181.531 prohibits employers from disciplining or threatening to discipline employees who refuse to attend employer-

11

sponsored meetings or to listen or view employer communications if the "meeting or communication is to communicate the opinion of the employer about religious or political matters." Section 181.531's definition of "political matters" only vaguely and imprecisely includes "matters *relating to*" a range of topics. As such, employers cannot reasonably know whether a particular matter is sufficiently related to a topic so as to expose them to liability. Section 181.531 is not narrowly tailored toward any legitimate end.

38. Because Section 181.531 is not narrowly tailored to achieve any compelling governmental interest, it cannot survive strict scrutiny.

### COUNT II – SECTION 181.531 IS PREEMPTED BY THE NLRA

39. The NLRA comprehensively regulates labor matters throughout the United States. see *San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236 (1959) (forbidding States to regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits) ("*Garmon* preemption") and *Machinists* v. *Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 140 (1976) (forbidding both the National Labor Relations Board (NLRB) and States from regulating conduct that Congress intended be left to be controlled by the free play of economic forces) ("*Machinist* preemption").

40. Section 181.531 attempts to regulate employer speech in a manner that Congress has prohibited. In 1946, the NLRB adopted speech restrictions similar to Section 181.531. *Clark Brothers Co.*, 70 NLRB 802, 805 (1946) (finding that the NLRA prohibited employer-employee meetings about union issues because employees were a "captive audience" and employers had "superior economic power"). In 1947, however, Congress repudiated these restrictions by amending the NLRA and adding 29 U.S.C. § 158(c)("Section 8(c)" of the NLRA). Congress added

Section 8(c) to the NLRA in order to restore and protect the First Amendment rights the Board extinguished. Section 8(c) provides as follows:

> The expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit. *See* 29 U.S.C. § 158(c).

Since 1947, the Supreme Court and the Courts of Appeals have unequivocally spoken: "[A]n employer's free speech right to communicate his views to his employees *is firmly established and cannot be infringed . . .*" *NLRB v. Gissel Packing Co., Inc.*, 395 U.S. 575, 617 (1969)(emphasis added); *Chamber of Commerce v. Brown,* 554 U.S. 60, 67-68 (2008) (NLRA Section 8(c) "implements the First Amendment" and "*expressly precludes regulation of speech about unionization so long as the communications do not contain a 'threat of reprisal or force or promise of benefit'*"); *see also Prescott Indus. Products Co.*, 500 F.2d 6, 10 n.13 (8th Cir. 1974) ("The legislative history of § 8(c) . . . makes it clear that *its purpose was to effectuate employers' First Amendment rights as a response, in part, to the restrictions placed by the Board on captive audience speeches*") (emphasis added).

41. Section 181.531 is preempted by Section 8(c) of the NLRA pursuant to *Garmon* preemption because Section 181.531 prohibits conduct the NLRA clearly protectsand frustrates rights the NLRA guarantees to employers. Even if this Court were to find it questionable whether the NLRA clearly protects the conduct prohibited by Section 181.531, it arguably does so, and *Garmon* preemption would still displace Minnesota's law. Section 181.531 is also preempted by the NLRA pursuant to *Machinists* preemption because Section 181.531 purports to regulate areas Congress intentionally left to be controlled by the free play of economic forces.

42. Section 181.531 threatens employers with civil liability for speaking with their employees about unionization and supporting labor unions.

43. Section 181.531 conflicts with and is preempted by the NLRA. Section 8(c) of the NLRA gives employers the right to "express[ ] any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form ... if such expression contains no threat of reprisal or force or promise of benefit," 29 U.S.C. § 158(c). Section 181.531 takes away the rights set forth under Section 8(c) of the NLRA, preventing employers from requiring employees to merely listen to or read employers' opinions on employees' exercise of rights.

44. Under the Supremacy Clause of the United States Constitution, federal law trumps any conflicting state law. Therefore, Section 181.531 is preempted by the NLRA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs hereby request that the Court enter a judgment:

1. Declaring that Section 181.531: (a) is unconstitutional as it violates the 1st and 14th Amendment of the U.S. Constitution and (b) is preempted by the NLRA;

2. Enjoining Defendants from enforcing Section 181.531 against Plaintiff Laketown Electric and the Plaintiff Associations' members, and from taking other actions against Plaintiff Laketown Electric and Plaintiff Associations' members based upon violations or alleged violations of Section 181.531;

3. Awarding Plaintiffs the costs and attorneys' fees expended on this action, in accordance with 42 U.S.C. § 1988 and any other applicable law; and

4. Awarding any further legal or equitable relief as the Court deems just and proper.

Dated: February 20, 2024

                                              <u>*s/Thomas R. Revnew*</u>
Thomas Revnew, Bar No. 0295620
trevnew@littler.com
Kurt J. Erickson, Bar No. 158380
kerickson@littler.com
Jacob D. Multer, Bar No. 0401877
jmulter@littler.com

LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone:    612.630.1000
Facsimile:    612.630.9626

Maurice Baskin (*pro hac vice to be filed*)
mbaskin@littler.com

LITTLER MENDELSON, P.C.
815 Connecticut Ave., NW Suite 400
Washington, DC 20006-4046
Telephone: 202.842.3400
Facsimile: 202.842.001

*Attorneys for Plaintiffs*