## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Chapter of Associated Builders and Contractors, Inc., National Federation of Independent Business, Inc., and Laketown Electric Corporation, | Case No. 0:24-cv-00536 (KMM/ECW) |
| Plaintiff, | |
| vs. | |
| Keith Ellison, in his official capacity as Attorney General of Minnesota, and Nicole Blissenbach, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry, | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| Defendants. | |

## INTRODUCTION

In Minnesota, employers cannot discipline or discharge employees who object to being forced to listen to their employer's religious or political opinions, unless those communications are necessary for the employees to carry out their job duties. *See* Minn. Stat. § 181.531 ("the Act"). Plaintiffs—a single Minnesota employer and two trade associations—allege the Act chills their First Amendment rights to force employees, under penalty of discipline or discharge, to listen to their political opinions. (Complaint ¶4.)

They sued Minnesota's Attorney General Keith Ellison ("the Attorney General") and Minnesota Department of Labor and Industry ("DLI") Commissioner Nicole Blissenbach ("the DLI Commissioner", together "State Officers") to obtain a declaration

regarding the Act's constitutionality, and enjoin these State Officers from enforcing it. (Compl. ¶¶18–19.)

Plaintiffs sued the wrong parties. As an initial matter, Plaintiffs *did not even plead* that either State Officer has a present intention to enforce the Act against them. But even if they had pled such an allegation, the State Officers are entitled to sovereign immunity because record evidence submitted with this motion proves otherwise. Further, the DLI Commissioner has no enforcement procedure or mechanism to enforce the Act, and even if she did, she has no present intention to enforce it against Plaintiffs. Moreover, while the Attorney General could enforce the Act, he has not and has no present intention to enforce it against Plaintiffs.

Primary enforcement of the Act will occur by individual employees through the Act's private right of action. Because these State Officers have no past or present intent to enforce the Act, and one of them lacks any enforcement tools at all, the 11th Amendment bars this suit. Therefore, this Court lacks subject matter jurisdiction to hear this case and Plaintiffs' complaint should be dismissed.

## STATEMENT OF FACTS

### A. THE ACT LIMITS EMPLOYER RETALIATION, NOT SPEECH.

Despite its name, the "Employer-Sponsored Meetings or Communication" law ("the Act") does not regulate speech at all. The Act simply regulates *when* a Minnesota employer can discipline, discharge, or otherwise penalize an employee who declines to receive communications about their employers' religious or political beliefs. *See generally*, Minn. Stat. § 181.531. The Act's application is straightforward. If receiving communications

2

about their employer's religious or political opinions is *necessary* to perform the essential functions of their job, and an employee refuses to receive them, they *can* be disciplined, discharged, or otherwise penalized by their employers. *Id*. On the other hand, if receiving communications about their employer's religious or political opinions is *not necessary* to perform the essential functions of their job, and an employee declines to receive them, they *cannot* be disciplined, discharged, or otherwise penalized by their employers. *Id*. Like numerous state and federal employment laws, the Act regulates the employer-employee relationship.[1]

The Act is enforced through a private right of action. Minn. Stat. § 181.531, subd. 2. Employees alleging retaliation for declining to receive religious or political communications from their employer have 90 days to file suit seeking conventional employment law remedies (i.e., back pay, reinstatement, etc.). *Id*.

### B.  MINNESOTA'S DLI COMMISSIONER LACKS A MECHANISM TO ENFORCE THE ACT.

There is no statutory procedure for the DLI Commissioner to enforce the Act. The text of the Act makes no reference to the DLI Commissioner, and does not grant her any specific enforcement authority or ability over its provisions. *See generally,* Minn. Stat. § 181.531. While the DLI Commissioner is empowered to generally enforce and carry out

---

[1] Several Minnesota employment laws, like the Minnesota Whistleblower Act, operate the same way. *See* Minn. Stat. § 181.932, subd. 1(4) (forbidding employers from discharging or otherwise penalizing an employee for refusing to perform an action the employee has objective reason to believe is unlawful); *see also*, Minn. Stat. § 363A.15 (forbidding employers from engaging in retaliation against employees who oppose acts made unlawful under the Minnesota Human Rights Act).

the purposes of Minnesota Statutes Chapter 181, the Minnesota Legislature did not extend her enforcement tools, like issuing compliance orders or initiating a civil action to enforce the Act. *See* Minn. Stat. § 175.20 (granting the commissioner general investigative authority across Minnesota statutes chapters 175, 177, 181, 181A, and 184); Minn. Stat. § 177.27, subds. 4–5 (cataloguing the sections of Chapters 177, 179, 181, and 268B where the DLI commissioner may issue compliance orders or bring actions; Section 181.531 excluded). Accordingly, while the DLI Commissioner has general authority to investigate violations of Chapter 181, she has no mechanism to enforce the Act.

When the Minnesota Legislature debated the Act, DLI declared it would not have enforcement authority over its provisions. (*See* Declaration of Commissioner Nicole Blissenbach ("Blissenbach Decl."), ¶¶ 3-5, Exhibit A, p.4-5, Exhibit B, p.4-5.) Any individuals contacting DLI about potential violations of the Act would be directed to private counsel. (Id.) Consistent with DLI's representations to the Minnesota Legislature, the DLI Commissioner has never investigated, is not currently investigating, and has no present intention to investigate any Minnesota employer, including Plaintiffs, for any alleged violations of the Act. (Blissenbach Decl., ¶¶ 10-11.) Likewise, the DLI Commissioner has never enforced or threatened to enforce the Act against any Minnesota employer, and has no statutory procedure or mechanism to do so. (Blissenbach Decl., ¶¶ 6-7.) Even if the DLI Commissioner did have a mechanism to enforce the Act, she has no present intention to enforce the Act against anyone, including Plaintiffs. (Blissenbach Decl., ¶¶ 8-9.)

### C. Minnesota's Attorney General Has No Present Intention to Enforce The Act.

Minnesota's Attorney General is authorized to investigate and enforce "violations of the laws of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn. Stat. § 8.31, subd. 1. The Attorney General has had enforcement authority over Chapter 181 since 2019. Minn. Stat. § 181.1721.

The Attorney General has never enforced or threatened to enforce the Act against Plaintiffs, or any other Minnesota employer. (Declaration of Attorney General Keith Ellison, ¶¶ 4-5.) Since the Act's enactment in 2023, the Attorney General's office has not received any complaints regarding alleged violations of the Act. (Id. at ¶ 8.) Likewise, the Attorney General is not currently investigating and does not presently intend to investigate Plaintiffs, or any other Minnesota employer, for alleged violations of the Act. (Id. at ¶¶ 9-10.) Although the Attorney General *could* enforce the Act, its primary enforcement mechanism is through the private right of action. Minn. Stat. § 181.531, subd. 2. Accordingly, the Attorney General has no present intention to enforce or threaten enforcement of the Act against Plaintiffs, or any other Minnesota employer. (Ellison Decl., ¶¶ 6-7.)

### STANDARD OF REVIEW

The State Officers move to dismiss Plaintiffs' complaint, and assert a factual attack on subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Factual attacks under Rule 12(b)(1) focus on the veracity of the facts underpinning a plaintiff's assertion of subject matter jurisdiction. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018); *Davis v.*

*Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018); *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 520–21 (8th Cir. 2007). Unlike other Rule 12 motions, the court does *not* give plaintiffs allegations or evidence any presumption of truth, and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914–15 (8th Cir. 2015); *Osborn v. United States*, 918 F.2d 724, 729-30, n.6 (8th Cir. 1990). Plaintiffs invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence. *Moss*, 895 F.3d at 1097.[2]

## ARGUMENT

### THIS COURT LACKS SUBJECT-MATTER JURISDICTION.

This Court lacks subject-matter jurisdiction because the State Officers are entitled to sovereign immunity. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000) ("[I]mmunity is a jurisdictional question"); *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002) (standing). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. F.D.I.C.*, 915 F.2d 1171, 1174 (8th Cir. 1990). Because this Court lacks jurisdiction, the Complaint must be dismissed.

---

[2] On a Rule 12(b)(1) motion challenging subject-matter jurisdiction as a factual matter, the district court considers matters outside the pleadings. *Branson Label, Inc.*, 793 F.3d at 914-15 (8th Cir. 2015). Considering matters outside the pleadings does not convert a 12(b)(1) motion to one for summary judgment. *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635, 637 n.4 (8th Cir. 2003).

### A. THE STATE OFFICERS ARE IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The Supreme Court has "recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Id*. (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

"In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 989–90 (8th Cir. 2022) (citing *281 Care Comm. v. Arneson* (*Care Committee I*), 638 F.3d 621, 632 (8th Cir. 2011)). "The *Ex parte Young* exception only applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *Minn. RFL*, 33 F.4th at 990 (citing *281 Care Comm. v. Arneson* (*Care Committee II*), 766 F.3d 774, 797 (8th Cir. 2014) (quoting *Ex parte Young*, 209 U.S. at 156)).

Thus, to successfully challenge the constitutionality of a state law in federal court, Plaintiffs must plead *and* prove the State Officers (1) have "some connection with the enforcement" of the challenged law; and (2) have "*threaten*[*ed*] and [*are*] *about to commence* proceedings" to enforce the statute. *Ex parte Young*, 209 U.S. at 156–57

(emphasis added). But even when a state official has authority to enforce a statute, enforcement is not imminent for purposes of *Ex parte Young* when state officials submit evidence that they have no present intent to exercise that authority.

The State Officers have never threatened and have no present intention to enforce the Act against Plaintiffs, and the DLI Commissioner does not even have tools to do so. The *Ex parte Young* exception does not apply, and sovereign immunity bars this action.

### 1.  The DLI Commissioner Does Not Enforce the Act.

The DLI Commissioner does not enforce the Act. To determine whether the *Ex parte Young* exception applies, courts conduct "a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quotation omitted). To meet the first part of this inquiry, an official must have "some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). "Without that connection, the officer would be sued merely 'as a representative of the state' in an impermissible attempt to 'make the state a party.'" *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015) (quoting *Ex parte Young*, 209 U.S. at 157).

The DLI Commissioner has general authority to investigate violations of Chapter 181, but she lacks any specific statutory procedure or mechanism to enforce the Act. *See* Minn. Stat. § 175.20 (granting the commissioner general investigative authority across Minnesota statutes chapters 175, 177, 181, 181A, and 184); Minn. Stat. § 177.27, subds.

4–5 (cataloguing the sections of Chapters 177, 179, 181, and 268B where the DLI commissioner may issue compliance orders or bring actions; Section 181.531 excluded).

Courts have repeatedly held that a state official's general enforcement authority over an allegedly unconstitutional law is insufficient to justify an *Ex parte Young* exception. *See Advanced Auto Transp., Inc. v. Pawlenty*, Civ. No. 10-159 (DWF/AJB), 2010 WL 2265159, at *3 (D. Minn. June 2, 2010) (finding Governor's general enforcement authority of Minnesota's laws was an insufficient connection to a provision of Minnesota Unemployment Insurance Law to lose his sovereign immunity); *see also Minn. Citizens Concerned for Life, Inc., v. Swanson*, Civ. No. 10-2938 (DWF/JSM), 2011 WL 797462, at *3 (D. Minn. Mar. 1, 2011) ("[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.") (citation omitted). Because the DLI Commissioner lacks any statutory mechanism or procedure to enforce the Act, she lacks a sufficient connection to its enforcement. Plaintiffs cannot establish, the *Ex parte Young* exception and the DLI Commissioner is entitled to sovereign immunity.

### 2.   The State Officers Have Threatened to Enforce the Act, and are Not About to Commence Enforcement Proceedings Against Plaintiffs.

The State Officers are protected by sovereign immunity because they have not enforced and have no present intent to enforce the Act, and Plaintiffs have not established a threat of enforcement. The "*Ex parte Young* doctrine does not apply when the defendant official has *neither enforced nor threatened to enforce* the statute challenged as unconstitutional." *Minn. RFL*, 33 F.4th at 992 (citing *Care Committee II*, 766 F.3d at 797

(emphasis in original)). "The *Ex parte Young* exception only applies against officials 'who threaten *and* are about to commence proceedings.'" *Care Committee II*, 766 F.3d at 797 (quoting *Ex parte Young*, 201 U.S. at 156) (emphasis added); *see also Minn. RFL Repub. Farmer Labor Caucus v. Freeman*, 486 F Supp. 3d 1300, 1310 (D. Minn. 2020) ("[T]he Eighth Circuit applies an imminence standard that is higher for *Ex parte Young* claims than for Article III standing."). Merely possessing authority to enforce a law is not enough. Plaintiffs must point to actual, threatened, or imminent enforcement.

Here, Plaintiffs do not even allege past or present threats of enforcement. (*See* Compl., ¶¶ 18-19, 25.) But even if they had, the State Officers' declarations submitted in support of this factual attack on this Court's subject matter jurisdiction definitively prove the opposite. The State Officers have never enforced or threatened to enforce the Act. (Ellison Decl., ¶¶ 4-5; Blissenbach Decl., ¶¶ 7-8.) The State Officers have not investigated and have no present intent to investigate alleged violations of the Act. (Ellison Decl., ¶¶ 8-10.) Further, the State Officers do not have any present intention to enforce the Act against Plaintiffs. (Ellison Decl., ¶¶ 6-7; Blissenbach Decl., ¶¶ 8-9.)

Where, as here, Plaintiffs fail to even allege that the State Officers have threatened, commenced, or are about to commence proceedings under the challenged statute, courts repeatedly dismiss claims like Plaintiffs' on Eleventh Amendment grounds. *See Greene v. Dayton*, 81 F. Supp. 3d 747, 752 (D. Minn. 2015) (dismissing claims against the Governor and state commissioners "because the Plaintiffs have failed to allege that the State Defendants have threatened or are about to commence proceedings against Plaintiffs or anyone else under the state statute"); *North Dakota v. Swanson*, Civ. No. 11–3232

(SRN/SER), 2012 WL 4479246, at *18–19 (D. Minn. Sept. 30, 2012) ("Attorney General Swanson is immune from this suit under the Eleventh Amendment. Plaintiffs do not allege that Attorney General Swanson has threatened a suit or is about to commence proceedings against them or anyone else under" the challenged law.); *Advanced Auto Transport, Inc., Inc.*, 2010 WL 2265159, at *3 (finding the Attorney General and Governor immune from suit because the plaintiff does not allege that they "threatened a suit or are about to commence proceedings").

Again, Plaintiffs cannot cure their deficient pleading by amending their complaint to add allegations that the State Officers' intend the Act's imminent enforcement. In a factual attack on this Court's subject matter jurisdiction, Plaintiffs' allegations are not presumed true, no inferences are drawn in their favor, and they bear the burden of establishing jurisdiction by a preponderance of the evidence. They cannot do it. These State Officials have not threatened and are not about to commence enforcement proceedings against Plaintiffs under the Act. The State Officials' declarations elevate this from mere inference to uncontroverted fact. Therefore, they are entitled to sovereign immunity and Plaintiffs' Complaint must be dismissed.

## CONCLUSION

Plaintiffs fail to demonstrate by a preponderance of the evidence that the *Ex parte Young* exception to sovereign immunity applies to the State Officers. Accordingly, this Court lacks subject matter jurisdiction and Plaintiffs' complaint must be dismissed.

Dated:  March 14, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


/s/  Nick Pladson
NICK PLADSON
Assistant Attorney General
Atty. Reg. No. 0388148
BENJAMIN HARRINGA
Assistant Attorney General
Atty. Reg. No. 0399254

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 300-7083 (Voice)
(651) 296-7438 (Fax)
Nick.Pladson@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS