UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ASSOCIATED BUILDERS AND CONTRACTORS OF MINNESOTA AND NORTH DAKOTA, NATIONAL FEDERATION OF INDEPENDENT BUSINESS, and LAKETOWN ELECTRIC CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>KEITH ELLISON, in his official capacity as Attorney General of Minnesota, NICOLE BLISSENBACH, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry,<br><br>Defendants. | Court File No. 24-cv-00536-KMM-ECW<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## INTRODUCTION

Plaintiffs Minnesota Chapter of Associated Builders and Contractors, Inc. ("MNABC"), National Federation of Independent Business, Inc. ("NFIB"), and Laketown Electric Corporation ("Laketown"), an MNABC member, (collectively, "Plaintiffs") respectfully request that this Court deny Defendants' Motion to Dismiss. Plaintiffs bring this suit for equitable relief, asserting a cause of action under 42 U.S.C. § 1983 and the equitable cause of action recognized in *Ex parte Young*. They ask this Court to (1) declare that Minn. Stat. § 181.531 ("Act") violates the First Amendment to the U.S. Constitution and is preempted by the National Labor Relations Act (NLRA) and (2) enjoin the Commissioner of the Minnesota Department of Labor and Industry, Nicole Blissenbach, and the Attorney General of Minnesota, Keith Ellison, from enforcing the Act.

In 2023, the State of Minnesota enacted Minn. Stat. § 181.531, which makes it unlawful for employers to discipline or discharge employees who refuse to attend an employer-sponsored meeting or to listen to communications that contain the employer's opinions on broadly defined "political" or "religious" matters. Employer-sponsored

meetings, commonly referred to as "captive-audience" meetings, are often held by employers (including Plaintiff Laketown in this matter) on paid time in order to communicate to employees their opinions on certain subjects. For example, Laketown has previously held, and plans to do so in the future, such meetings to communicate to employees its opinion with respect to political matters like unionization. Notably, the primary enforcement mechanism for the Act lies with individuals through a private right of action (though, to be sure, Defendants do have enforcement authority as outlined below).

Defendant Keith Ellison, in his capacity as Attorney General of Minnesota ("AG Ellison") and Defendant Nicole Blissenbach, in her capacity as Commissioner of the Minnesota Department of Labor and Industry ("Commissioner Blissenbach") (collectively, "Defendants") move to dismiss Plaintiffs' claim for pre-enforcement review of the Act on the grounds that they are entitled to sovereign immunity under the Eleventh Amendment because they do not have a "present intention" to enforce the law. However, the *Ex Parte Young* exception to Eleventh Amendment immunity applies here – Defendants maintain authority to enforce the Act's blatantly unconstitutional provisions against Plaintiffs.

The Supreme Court decided this issue a little over two years ago in *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021). In *Whole Woman's Health*, the state of Texas enacted a statute contravening the (then) constitutional right to abortion, which the state attempted to shield from review by making the enforcement mechanism solely through a private right of action. The Court, recognizing Texas' attempt for what it was, allowed the suit to proceed under the *Ex Parte Young* exception against several state executive-licensing officials who "may or must take enforcement actions" against plaintiffs if they violated the unconstitutional statute. Indeed, in another case nearly identical to this one

2

challenging Connecticut's recently enacted statute banning mandatory meetings, the District Court for the District of Connecticut, relying upon *Whole Woman's Health*, ruled that Plaintiffs had satisfied the *Ex Parte Young* analysis after a motion to dismiss was filed on similar grounds. *Chamber of Commerce of the United States of America et al. v. Dante Bartolomeo et al.*, No. 3:22-cv-1373 (D. Conn. 2023).[1]

The same result must follow here.[2]  Minnesota has enacted this unconstitutional statute and attempts to shield it from pre-enforcement review by giving the primary enforcement mechanism to individuals through a private right of action.  Defendants now argue they are immune from suit on this basis, despite the fact that they maintain authority to enforce the Act.  Defendants' argument should be rejected.  For these reasons and those outlined below, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

## **PROCEDURAL POSTURE**

Plaintiffs filed this suit on February 20, 2024 against Defendants AG Ellison and Commissioner Blissenbach, alleging that Minn. Stat. § 181.531 is unconstitutional and preempted by the National Labor Relations Act.  Individually, each Defendant has the power to enforce the Act.  On March 14, 2024, Defendants filed a Motion to Dismiss this action, on the grounds that this Court lacks subject-matter jurisdiction.  Plaintiffs now respond to Defendants' Motion to Dismiss.

---

[1] The court denied the motion to dismiss in a bench decision.  A copy of the transcript is publicly available and attached as **Exhibit A** to the Declaration of Jacob D. Multer.

[2] Plaintiffs note that in *Whole Woman's Health*, the Texas Attorney General was dismissed from the action because he did not have enforcement authority.  Here, however, AG Ellison has enforcement authority as further outlined below, and Defendants do not contend otherwise.  Accordingly, AG Ellison, along with Commissioner Blissenbach, are proper parties.

## SUMMARY OF ARGUMENT

Commissioner Blissenbach, in her extensive authority to enter and investigate employer establishments, has a connection with the enforcement of the Act. Defendants admit AG Ellison similarly has a connection in his ability to directly enforce the Act. Moreover, Defendants' attempt to shield the Act from pre-enforcement review, necessarily chilling Plaintiffs' speech, must fail. Because Defendants retain the ability to enforce Minn. Stat. § 181.531, the Eleventh Amendment does not bar this suit by virtue of sovereign immunity. This Court has proper subject-matter jurisdiction, and Defendants' Motion to Dismiss should be denied.

## STATEMENT OF RELEVANT FACTS

On March 22, 2023, the Minnesota Senate introduced SF 3035. Among numerous other things, SF 3035 provided for the addition of § 181.531, otherwise known as the "Employer-Sponsored Meetings or Communication" law to Minnesota's statutes. After months of debate, SF 3035 and HF 3028 (the accompanying House bill) were passed and presented to Governor Tim Walz for his signature. The bill was signed into law by Governor Walz on May 17, 2023.

In relevant part, the Act reads as follows:

**Subdivision 1. Prohibition.** An employer or the employer's agent, representative, or designee must not discharge, discipline, or otherwise penalize or threaten to discharge, discipline, or otherwise penalize or take any adverse employment action against an employee:

(1) because the employee declines to attend or participate in an employer-sponsored meeting or declines to receive or listen to communications from the employer or the agent, representative, or designee of the employer if the meeting or communication is to communicate the opinion of the employer about religious or political matters;

(2) as a means of inducing an employee to attend or participate in meetings or receive or listen to communications described in clause (1); or

(3) because the employee, or a person acting on behalf of the employee, makes a good-faith report, orally or in writing, of a violation or a suspected violation of this section.

…

**Subd. 3. Notice.** Within 30 days of August 1, 2023, an employer subject to this section shall post and keep posted, a notice of employee rights under this section where employee notices are customarily posted.

**Subd. 4. Scope.** This section does not:

(1) prohibit communications of information that the employer is required by law to communicate, but only to the extent of the lawful requirement;

(2) limit the rights of an employer or its agent, representative, or designee to conduct meetings involving religious or political matters so long as attendance is wholly voluntary or to engage in communications so long as receipt or listening is wholly voluntary; or

(3) limit the rights of an employer or its agent, representative, or designee from communicating to its employees any information, or requiring employee attendance at meetings and other events, that is necessary for the employees to perform their lawfully required job duties.

**Subd. 5. Definitions.** For the purposes of this section:

(1) "political matters" means matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civic, community, fraternal, or labor organization; and

(2) "religious matters" means matters relating to religious belief, affiliation, and practice and the decision to join or support any religious organization or association.

AG Ellison and Commissioner Blissenbach have authority to enforce § 181.531. *See* Minn. Stat. §§ 175.20 ("The commissioner or an authorized representative may enter . . . and inspect places of employment . . . , and investigate facts, conditions, practices or matters as the commissioner deems appropriate to enforce the laws within the commissioner's jurisdiction and to carry out the purposes of this chapter and chapter 177, 181, 181A, or 184."); 181.1721 ("In addition to the enforcement of this chapter by the department, the *attorney general may enforce this chapter* under section 8.31.") (emphasis

5

added). The language of § 181.1721 gives the attorney general enforcement authority not over certain sections of chapter 181, or certain provisions, but over the entirety of chapter 181, including § 181.531.

The Act prevents employers from disciplining employees who refuse to attend an employer-sponsored meeting or to receive or listen to communications that contain the employer's opinions on broadly defined political and religious matters. "Political matters" are broadly defined to include "proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civic, community, fraternal, or labor organization". Minn. Stat. § 181.531, Subd. 5.  In other words, employers are barred from holding mandatory meetings (or otherwise communicating with employees in any mandatory manner) in which the employer shares its opinion on proposals to change regulations, proposals to change public policy, as well as on an employee's decision to join or support a union.

Employers face significant penalties for violating the Act by taking action against employees who refuse to attend employer-sponsored meetings or decline to listen to an employer's opinion on "political" or "religious" matters.  Indeed, the Act is enforceable in several different ways.  First, discharged or disciplined employees can sue for damages, including, among other things, back pay and reestablishment of benefits, any other appropriate relief to make the employee whole, and attorneys' fees and costs. Minn. Stat. § 181.531, Subd. 2. Second, AG Ellison and Commissioner Blissenbach have independent authority to enforce the Act. See Minn. Stat. §§ 8.31, 175.20, 181.1721.

Since its passage, the Act has and continues to chill the free speech rights of Minnesota employers, who fear official enforcement and penalties if they hold meetings or

6

send messages about broadly and vaguely defined "political" or "religious" matters. Indeed, Laketown Electric previously conducted paid-time meetings in which it has shared with employees its opinion with respect to unions and other political matters, such as political candidates and state regulations. (Complaint, ECF Doc. No. 1 at ¶ 17). MNABC (a statewide trade organization which represents the interests of over 300 construction industry employers) members have similarly communicated and planned to communicate in the future with employees with respect to other political matters, such as political positions of certain labor organizations. (Complaint, ECF Doc. No. 1 at ¶ 15). NFIB members have also conducted mandatory paid-time meetings to communicate opinions on political matters, and planned to do so in the future. (Complaint, ECF Doc. No. 1 at ¶ 16). Laketown, MNABC members, and NFIB members communicate their opinions on such subjects to employees because they wish to inform their workforce how certain political positions of labor organizations or political candidates, or state laws or regulations, will negatively impact Laketown and/or other MNABC and NFIB members and their employees. (Complaint, ECF Doc. No. 1 at ¶¶ 15-17). Because of the vitally important nature of these communications, Laketown and other MNABC members and NFIB members expect and require their employees to attend these meetings, and expect and require their employees to otherwise listen to or review communications on these topics. (*Id.*)

The Act has forced Laketown, MNABC members, and NFIB members to cease communicating with employees on these topics. Laketown, MNABC members, and NFIB members believe that the Act exposes themselves to financial liability, costs, and attorneys' fees based on meetings and communications regarding political matters that they planned to conduct in the future. Based on the risk of liability, Plaintiffs or their members have

7

intentionally refrained from conducting such meetings and issuing such communications, effectively stripping them of their speech rights afforded under the First Amendment.

## ARGUMENT

Defendants assert a factual attack on this Court's subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where a party brings a factual attack on subject-matter jurisdiction, a court may look outside the pleadings to affidavits or other documents. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). The party invoking jurisdiction must prove jurisdictional facts by a preponderance of the evidence. *Id*. Defendants, however, cannot shield themselves by claiming they have no present intention of enforcing the law and thereby claiming the enforcement mechanism is solely through a private right of action. *See Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021).

### I.  THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO *EX PARTE YOUNG*

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). The Supreme Court has long "recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Id*. (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

"In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 989–90 (8th Cir. 2022) (citing *281 Care Comm. v.*

*Arneson* (*Care Committee I*), 638 F.3d 621, 632 (8th Cir. 2011)); *Courthouse New Serv. v. Gilmer*, 48 F.4th 808 (8th Cir. 2022). "The *Ex parte Young* exception applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *Minn. RFL*, 33 F.4th at 990 (citing *281 Care Comm. v. Arneson* (*Care Committee II*), 766 F.3d 774, 797 (8th Cir. 2014) (quoting *Ex parte Young*, 209 U.S. at 156)).

Thus, in order to challenge the constitutionality of a state law in federal court, a plaintiff must show that the state officers against whom the suit is brought (1) have "some connection with the enforcement" of the challenged law; and (2) have "threaten[ed] and [are] about to commence proceedings" to enforce the statute. *Ex parte Young*, 209 U.S. at 156–57.

### A. Commissioner Blissenbach and AG Ellission Have a Sufficient Connection with the Enforcement of the Act

Commissioner Blissenbach has authority to enforce the Act. Minn. Stat. § 175.20 gives the Commissioner of the Minnesota Department of Labor authority to:

> [E]nter without unreasonable delay and inspect places of employment, during normal working hours, and investigate facts, conditions, practices or matters as the commissioner deems appropriate to enforce the laws within the Commissioner's jurisdiction and to carry out the purposes of this chapter and chapter 177, 181, 181A, or 184. If an employer refuses to permit entry into the employer's place of employment, the Commissioner ***may apply for an inspection order*** in the district court in the county in which the place of employment is located requiring the employer to permit entry of the Commissioner or an authorized representative. The Commissioner or an authorized representative may issue subpoenas, collect evidence, interview witnesses, take testimony, compel the attendance of witnesses, and shall have authority to administer oaths and take testimony under oath…

As if that were not enough, Minn. Stat. § 181.1721 specifically reiterates the Minnesota Department of Labor and Industry's ("DOLI") authority to enforce Chapter 181: "***In***

9

***addition to the enforcement of this chapter by the department***, the attorney general may enforce this chapter under section 8.31."

Commissioner Blissenbach would have this Court believe the DOLI has ***no authority*** to enforce any portion of the statutory scheme that the DOLI oversees if such authority is not specifically enumerated in Minn. Stat. § 177.27, subds. 4-5 (outlining the specific statutes under which the Commissioner may issue compliance orders and bring civil actions to enforce such orders).³  But the statutory scheme empowers the Commissioner to enter and inspect places of employment, issue subpoenas, collect evidence, interview witnesses, and more under § 175.20.  And in fact, the Commissioner is empowered to investigate potential violations and may then refer such violations to the Attorney General – who, Defendants admit, has authority to enforce the Act.  Indeed, the Act requires a notice posting by employers of the rights given to employees by the Act – it is not clear how the Commissioner would posit such provision be enforced if the DOLI has no authority to do so.  Furthermore, Commissioner Blissenbach's declaration is also revealing in that while she claims she does not have a present intention to enforce the Act through her own actions, she will indirectly enforce the unconstitutional law by referring individuals contacting DOLI to private attorneys for enforcement action.  (ECF Doc. No. 19, Blissenbach Dec. at ¶ 3).

The Commissioner's power to enter places of business, inspect, and otherwise investigate employers or otherwise refer them to the Attorney General or private attorneys for prosecution for violating the Act provides the requisite connection necessary under *Ex*

---

³ Commissioner Blissenbach's declaration cites to the Fiscal Notes prepared by the Minnesota Legislature and state only that "DLI ***assumes*** it does not have authority to enforce" the Act. (ECF Doc. No. 19, Blissenbach Dec. at ¶¶ 4&5, Ex. A, p. 4; Ex. B, p 4).  DOLI's assumption is not binding legal authority.

10

*Parte Young*. *Jones v. Jegley*, 947 F.3d 1100, 1103 n.2 (8th Cir. 2020) ("Because the Arkansas Ethics Commission ***investigates campaign-finance violations***, levies fines against candidates, and ***makes referrals to law enforcement***, Ark. Code § 7-6-218(b), the Commissioners have a 'strong enough' connection to the challenged law to make them 'proper defendant[s].'" (emphasis added)); *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) ("While we do require 'some connection' between the attorney general and the challenged statute, ***that connection does not need to be primary authority*** to enforce the challenged law.") (emphasis added); *Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (attorney general was proper defendant under *Ex Parte Young* where attorney general was empowered to "aid prosecutors when so directed by the Governor" and to "sign indictments when so directed by the trial court"); *see also Pocatello Educ. Ass'n v. Heideman*, 123 F. App'x 765, 766 (9th Cir. 2005) (secretary of state's authority to "investigate violations and seek injunctive relief" provided sufficient connection under *Ex Parte Young*).

Because the Commissioner has power to enter employer establishments, inspect such establishments, and has broad investigatory powers, the Commissioner has the requisite connection to enforcement of the Act necessary to satisfy the first step of the *Ex Parte Young* analysis. Moreover, Defendants do not dispute that AG Ellison has the requisite connection to enforcement of the Act.

### B. Defendants' Ability to Enforce the Act Satisfies the *Ex Parte Young* Exception to Sovereign Immunity

Defendants make much ado of the fact that the "primary" enforcement mechanism of the Act is through a private right of action in a futile attempt to shield themselves from liability. Defendants argue that they have never enforced or threatened to enforce the Act

(notwithstanding the fact that the Act became law less than a year ago), that they have not investigated and have no intent to investigate violations of the Act, and that they have no present intention to enforce the Act against Plaintiffs. Such an attempt to shield the blatantly unconstitutional Act from review must be rejected.

Recent Supreme Court law underscores that the *Ex Parte Young* exception to sovereign immunity is applicable in this matter. In *Whole Woman's Health v. Jackson*, 595 U.S. 30, 142 S. Ct. 522 (2021), the Supreme Court reviewed a Texas statute which contained a private right of action, and reaffirmed that "*Ex Parte Young* authorizes federal courts to enjoin certain state officials from enforcing state laws." 142 S. Ct. at 534. As relevant here, in *Whole Woman's Health,* the Court held that the *Ex Parte Young* exception permitted the plaintiffs' claim to proceed against three "executive licensing official[s] who ***may*** or must take enforcement actions against the petitioners if they violate the terms of Texas's Health and Safety Code." *Id*. at 535 (emphasis added). So too here. Plaintiffs have sued state officials "who may . . . take enforcement actions" against them and their members, and thus sovereign immunity does not bar this suit. *Id*. at 535. As Chief Justice Roberts stated in his concurrence:

> Texas has employed an array of stratagems **designed to shield its unconstitutional law from judicial review**. To cite just a few, the law authorizes "[a]ny person," other than a government official, to bring a lawsuit against anyone who "aids or abets," or intends to aid or abet, an abortion performed after roughly six weeks; has special preclusion rules that allow multiple lawsuits concerning a single abortion; and contains broad venue provisions that allow lawsuits to be brought in any of Texas's 254 far flung counties, no matter where the abortion took place. See Tex. Health & Safety Code Ann. §§ 171.208(a), (e)(5), 171.210 (West Cum. Supp. 2021). The law then provides for minimum liability of $10,000 plus costs and fees, while barring defendants from recovering their own costs and fees if they prevail. §§ 171.208(b), (i). It also purports to impose backward-looking liability should this Court's precedents or an injunction preventing enforcement of the law be overturned. §§ 171.208(e)(2), (3). And it forbids many state officers from directly enforcing it. § 171.207.

12

>These provisions, among others, ***effectively chill*** the provision of abortions in Texas. Texas says that the law also blocks any pre-enforcement judicial review in federal court. On that latter contention, Texas is wrong. As eight Members of the Court agree, see *ante,* at ——, ***petitioners may bring a pre-enforcement suit challenging the Texas law in federal court under Ex parte Young***, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), ***because there exist state executive officials who retain authority to enforce it.*** See, *e.g.*, Tex. Occ. Code Ann. § 164.055(a) (West 2021). Given the ongoing chilling effect of the state law, the District Court should resolve this litigation and enter appropriate relief without delay.

*Id.* at 59-60 (emphasis added).

Such is the case here. In an attempt to shield the Act from pre-enforcement judicial review, Minnesota has given the primary power to enforce the Act to individuals via a private right of action. Defendants, who retain power to enforce the Act, pinky-swear that, as of this moment, they don't intend to enforce the Act against Plaintiffs, and argue that this blocks pre-enforcement review of the Act.[4] This is not, and cannot be, the law. Because Defendants retain authority to enforce the Act, Plaintiffs must be allowed to bring this pre-enforcement suit under *Ex Parte Young*, lest Plaintiffs be forced to choose between 1) risking civil liability under the Act, or 2) foregoing the free speech rights afforded to them under the First Amendment.

To that end, it is worth addressing the unsustainable nature of the argument at the core of Defendants' Motion. Defendants, and the Minnesota Legislature (much like the Texas legislature) believe they have found a fail-safe workaround to *Ex Parte Young* which

---

[4] Indeed, if Commissioner Blissenbach is not going to enforce § 181.531 as she claims, the Attorney General then has an affirmative obligation do so. Minn. Stat. § 8.31 provides the Attorney General "**shall** investigate violations of the law of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." The Act is clearly a law that the Minnesota legislature enacted that is an alleged unlawful practice, which **requires** the Attorney General. Further, Article V, Section 6 of the Minnesota State Constitution **requires** the Attorney General to support the constitution of the United States and of this state and to discharge faithfully the duties of his office to the best of his judgment and ability.

13

enables them to pass blatantly unconstitutional statutes and still avoid pre-enforcement review actions such as this one: namely, making the primary enforcement mechanism for such statutes a private right of action.  In this scenario, individuals or organizations are *forced* to face a choice: 1) avoid taking any action which may violate the statute and subject themselves to an individual's suit (or enforcement by authorities such as Commissioner Blissenbach or AG Ellison); 2) continue taking such actions, and expose themselves to civil liability, including the significant costs of litigation.  No option exists for individuals to preemptively challenge a statute by filing suit against state authorities to seek a declaration that the statute is unconstitutional.  The 8th Circuit has spoken on that issue: "We have repeatedly ***rejected the argument*** that a plaintiff ***must risk prosecution before challenging a statute under the First Amendment***, and we do so again here." *Jones v. Jegley*, 947 F.3d 1100, 1104 (8th Cir. 2020) (emphasis added); *see also Telescope Media Grp. v. Lucero*, 936 F.3d 740, 749 (8th Cir. 2019); *Arkansas Right to Life State Pol. Action Comm. v. Butler*, 146 F.3d 558, 560 (8th Cir. 1998).

Indeed, in another case nearly identical to this one challenging Connecticut's recently enacted statute banning mandatory employer-sponsored meetings, the District Court for the District of Connecticut ruled that Plaintiffs had satisfied the *Ex Parte Young* analysis after a motion to dismiss was filed on similar grounds.  *Chamber of Commerce of the United States of America et al. v. Dante Bartolomeo et al.*, No. 3:22-cv-1373 (D. Conn. 2023).[5]  In the Connecticut case, the State of Connecticut introduced a declaration from a State officer essentially claiming it had not and would not investigate violations of that State's laws.

---

[5] The court denied the motion to dismiss in a bench decision.  A copy of the transcript is publicly available and attached as **Exhibit A** to the Declaration of Jacob D. Multer.

(Declaration of Jacob D. Multer ("Multer Dec."), *Ex. B*).   Disregarding that declaration, the court, citing *Whole Women's Health*, found that "plaintiffs may bring this pre-enforcement suit challenging [the mandatory meeting statute], quote, '**because there exist state executive officials who retain authority to enforce it**.'"  *Bartolomeo*, No. 3:22-cv-1373 (Multer Dec., *Ex. A* at 48-49 (citing *Whole Women's Health*, 595 U.S. at 60) (emphasis added)).

To the extent that Defendants rely on cases from this Court and the 8th Circuit to support their argument that enforcement must be *absolutely imminent*, such cases are belied by the Supreme Court's holding in *Whole Woman's Health*, especially considering that none of the cited cases present the issue as here and as in *Whole Woman's Health*: the State's attempt to shield an unconstitutional statute from pre-enforcement review by granting the primary enforcement mechanism via a private right of action  (ECF Doc. 15 at 9-11) (citing cases prior to *Whole Woman's Health*).

Consider this: the State of Minnesota passes a statute which forbids any criticism of the Governor, lest they face civil penalties.  The only enforcement mechanism, however, is via a private right of action, through which aggrieved individuals may bring suit against those who criticize the Governor in any manner.  Such a statute, though blatantly unconstitutional, requires all citizens to choose between exercising their free speech rights and facing civil penalties, or foregoing that right guaranteed to them under the First Amendment in order to avoid such potential penalties – or at least to avoid the potential up-front cost of litigation.

Such a statutory scheme runs afoul of and directly contrary to the spirit of the Eleventh Amendment and *Ex Parte Young*.  To allow such a blatant circumvention of the Constitution risks undue proliferation of similarly unconstitutional statutes – not just in

15

Minnesota, but around the country. Defendants' attempt to shield the Act from pre-enforcement review must be rejected.

## CONCLUSION

Commissioner Blissenbach, in her extensive authority to enter and investigate employer establishments, has a connection with the enforcement of the Act. AG Ellison, Defendants admit, similarly has a connection in his ability to directly enforce the Act. Moreover, Defendants' attempt to shield the Act from pre-enforcement review, necessarily chilling Plaintiffs' speech, must fail. Because Defendants retain the ability to enforce Minn. Stat. § 181.531, the Eleventh Amendment does not bar this suit by virtue of sovereign immunity. Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

Dated: April 4, 2024

*/s/ Thomas R. Revnew*
Thomas R. Revnew, Bar No. 0295620
trevnew@littler.com
Kurt J. Erickson, Bar No. 158380
kerickson@littler.com
Jacob D. Multer, Bar No. 0401877
jmulter@littler.com

LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone:  612.630.1000
Facsimile:   612.630.9626

***Attorneys for Plaintiffs***