UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Chapter of Associated Builders and Contractors, Inc., National Federation of Independent Business, Inc., and Laketown Electric Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Keith Ellison, in his official capacity as Attorney General of Minnesota, and Nicole Blissenbach, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry,<br><br>Defendants. | Case No. 0:24-cv-00536 (KMM/ECW)<br><br><br><br>**DEFENDANTS'**<br>**REPLY MEMORANDUM**<br>**IN SUPPORT OF**<br>**MOTION TO DISMISS** |

Plaintiffs' lawsuit is barred by Eleventh Amendment sovereign immunity because they sued two State Officers who – it is undisputed – have not threatened to enforce and have no present intention to enforce the Act against Plaintiffs. (Docs. 18 & 19.) Because they do not face a 'threat of imminent enforcement' under the Act from these State Officers, they cannot establish the *Ex parte Young* exception to the Eleventh Amendment. Plaintiffs' mere allegations in their complaint, which are not entitled to a presumption of truth on this Rule 12(b)(1) factual attack, fail to prove by a preponderance of evidence that this Court has subject matter jurisdiction to hear this case. Accordingly, because this Court lacks subject matter jurisdiction, this case must be dismissed.

I. **SUBJECT MATTER JURISDICTION DOES NOT EXIST BECAUSE PLAINTIFFS FAILED TO PROVE THAT STATE OFFICERS THREATENED AND ARE ABOUT TO COMMENCE PROCEEDINGS AGAINST THEM TO SATISFY *EX PARTE YOUNG*.**

*Ex parte Young* does not apply "when the defendant official has neither enforced nor threatened to enforce the statute challenged as unconstitutional," because the imminent-enforcement requirement is not satisfied. *281 Care Committee v. Arneson*, 766 F.3d 774, 797 (8th Cir. 2014) ("*Care Committee II*") (citation omitted). "The *Ex parte Young* exception only applies against officials 'who threaten and are about to commence proceedings . . . to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 990 (8th Cir. 2022) (quoting *Care Committee II*, 766 F.3d at 797).

    A. **Confronted With The State Officers' Declarations, Plaintiffs' Pleadings Alone Cannot Defeat This Factual Attack On Jurisdiction.**

Plaintiffs contend that merely alleging that State Officers have a connection to the enforcement of an unconstitutional law is sufficient to establish jurisdiction. (Doc. 23, p. 13.)[1] But when a defendant launches a factual attack under Rule 12(b)(1), "the existence of subject matter jurisdiction [is challenged] in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Branson*

---

[1] Plaintiffs appear to mistake a Rule 12(b)(1) *factual* attack for a Rule 12(b)(1) *facial* attack. In the latter, "[t]he plaintiff is entitled to the safeguards she would have in 'defending against a motion brought under Rule 12(b)(6).'" *Ratfield v. Delta Air Lines, Inc.*, No. 22-CV-2212 (KMM/DLM), 2023 WL 5178593, at *6 (D. Minn. Aug. 11, 2023) (citing *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016)). Like Rule 12(b)(6) motions, in a facial attack, "the court assumes the facts in the complaint are true and takes all reasonable inferences in the light most favorable to the plaintiff when deciding the motion. *Id.* (citation omitted).

*Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 914–15 (8th Cir. 2015) (citation and quotation marks omitted). "Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." *Id*.

Plaintiffs offered no evidence to support their claim for jurisdiction, and their pleadings lack any allegation that they face an imminent threat of the Act's enforcement by these State Officers. Meanwhile, the State Officers' uncontroverted declarations make clear they have no past or present intent to enforce the Act against Plaintiffs. Therefore, *Ex parte Young* does not apply and this Court lacks jurisdiction because sovereign immunity bars this case. (Docs. 18 & 19); *see also Todd v. AFSCME, Council 5*, 571 F. Supp. 3d 1019, 1024 & n.1 (D. Minn. 2021) (considering declaration attached to defendant's Rule 12(b)(1) motion in factual attack on subject matter jurisdiction and dismissing claim for prospective injunctive relief), *appeal docketed* No. 21-3749.

Plaintiffs failed to prove by a preponderance of the evidence that these State Officers threatened or are about to enforce the Act against them, and they have not established, as a factual matter, that *Ex parte Young*'s exception to the State Officers' sovereign immunity applies. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018); *Freeman*, 33 F.4th at 990. Accordingly, the State Officers are immune from this suit under the Eleventh Amendment, this Court lacks subject matter jurisdiction, and this case must be dismissed.

  **B.** **The *Ex parte Young* Exception Can Be Decided in a Factual Attack on Court Jurisdiction.**

The Eighth Circuit's decisions in the *Care Committee* case illustrate how the resolution of *Ex parte Young* claims depend on procedural posture.

3

In *Care Committee I*, the Eighth Circuit reversed a district court's Rule 12(b)(6) dismissal of plaintiffs' suit against the Minnesota Attorney General challenging the constitutionality of a state law. *281 Care Committee v. Arneson*, 638 F.3d 621, 633 (8th Cir. 2011) (*Care Committee I*). Viewed through the prism of Rule 12(b)(6)'s plausibility standard, the Eighth Circuit focused on *Ex parte Young*'s authority requirement, finding that the plaintiffs' allegation of "some connection" between the Attorney General and enforcement of the act at issue was sufficient to state a claim. *Id*. at 632 (quotation omitted).

In *Care Committee II*, however, the same case was dismissed in the district court because the Minnesota Attorney General filed an affidavit stating they had never enforced the challenged law and had no present or future intent to do so. 766 F.3d at 796–97. Based on the Attorney General's undisputed affidavit, the district court held that plaintiffs failed to meet *Ex parte Young*'s imminent enforcement requirement. The Eighth Circuit affirmed, noting that this affidavit established the Attorney General's "unwillingness to exercise her ability to prosecute," which "carrie[d] the day at this stage in the proceedings." *Id*. at 797. Contrasting its review of the Rule 12(b)(6) motion in *Care Committee I*, the Eighth Circuit explained that courts presented with a *factual* disposition of an *Ex parte Young* claim are "no longer concerned with who is a *potentially* proper party for injunctive relief but rather who in fact is the right party." *Id*. (emphasis in original).

Since the *Care Committee* decisions, the Eighth Circuit and courts in this district routinely dismiss cases on motions addressing the *factual* question of "who in fact is the right party" for *Ex parte Young* purposes; in contrast, they deny 12(b)(6) motions challenging *Ex parte Young* claims when plaintiffs simply allege a state official has 'some

4

connection 'to enforcement of the challenged law, and may be "a *potentially* proper party for injunctive relief." *Compare Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, No. 19-CV-1949 (ECT/DTS), 2020 WL 1333154, at *2 (D. Minn. Mar. 23, 2020) (denying defendants' Rule 12(b)(6) motion to dismiss, noting that plaintiffs pled plausible connection between state officers and challenged law to meet *Ex parte Young* exception to sovereign immunity); *with Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 486 F. Supp. 3d 1300, 1310 (D. Minn. 2020) (denying plaintiffs' motion for preliminary injunction because plaintiffs failed to present facts showing that defendants were "about to commence proceedings" as required by *Ex parte Young*'s imminent enforcement element), *affirmed*, 33 F.4th 985; *Freeman*, 33 F. 4th at 991–92 (affirming denial of Plaintiffs' motion for preliminary injunction and concluding that the Attorney General did not need to disclaim future enforcement to defeat *Ex parte Young* exception); *see also Minnesota RFL Republican Farmer Lab. Caucus v. Moriarty*, 661 F. Supp. 3d 891, 895 (D. Minn. 2023) (granting summary judgment because County Attorney defendants' declarations disavowed present intent to enforce law precluding *Ex parte Young* exception).

Here, in the State Officers' factual attack on subject matter jurisdiction, the Court must decide whether the State Officers are "in fact …the right party" for Plaintiffs to sue at this time. *Osborn v. U.S*. 918 F.2d 724, 730 (8th Cir. 1990). Like the Attorney General in both *Care Committee II* and *Freeman* and the County Attorneys in *Moriarty*, the State Officers submitted declarations disclaiming any past or present intent to enforce the Act. Plaintiffs' argument that they need only plead 'some connection' between the State

Officers and enforcement of the Act might fare better if Defendants had asserted a *facial* attack on subject matter jurisdiction, where Rule 12(b)(6)'s more generous plausibility standard applies. But in this *factual* attack, the State Officers' uncontroverted declarations are the only facts for this Court to consider, (Docs. 18 & 19), and those declarations demonstrate that they are not the right parties to this case. Therefore, as a factual matter, Plaintiffs cannot meet the 'threat of imminent enforcement' requirement to establish *Ex parte Young*'s exception to the State Officers' sovereign immunity, and this Court lacks subject matter jurisdiction.

    **C.**    **The DLI Commissioner's Connection to the Act is Insufficient to Establish *Ex Parte Young*'s First Element.**

The State Officers argue that the DLI Commissioner enjoys sovereign immunity because she lacks a specific statutory mechanism to enforce the Act. (Doc. 15, pp. 3–4.) Plaintiffs claim the DLI Commissioner's authority to enter workplaces and investigate several entire chapters of the Minnesota Statutes necessarily means she is a proper target to sue and enjoin enforcement of the Act. (Doc. 23, p. 9-10). But the precedential cases Plaintiffs cite in support do not involve *Ex parte Young* and are all decided on Rule 12(b)(6) motions. (Id., p. 10-11.)[2] And, in any event, the DLI Commissioner's discretionary ability

---

[2] *Jones v. Jegley*, 947 F.3d 1100, 1103 & n.2 (8th Cir. 2020) (applying Rule 12(b)(6) plausibility standard); *Care Committee I*, 638 F.3d at 632 (applying Rule 12(b)(6) plausibility standard); *Reprod. Health Servs. of Planned Parenthood of St. Louis Region, Inc. v. Nixon*, 428 F.3d 1139, 1145 (8th Cir. 2005) (finding that Attorney general had "sufficient connection" to enforcement of Act to make him a "*potentially* proper party" for motion to dismiss but no evidence that Attorney General was directed by Governor or state trial court to enforce the act, therefore no threat of irreparable injury to warrant a preliminary injunction).

to inspect workplaces, and even apply for an order to inspect workplaces generally, does not give her the ability to bring an action to enforce the Act.

*Ex parte Young*'s first element requires that State Officers have "some connection to the enforcement of the challenged laws." *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) (emphasis added). But, as a factual matter, the DLI Commissioner's uncontested declaration makes plain that the DLI Commissioner informed the Minnesota Legislature that she never planned to enforce the Act and has no present intent to do so. (Doc. 19.) Moreover, even if the DLI Commissioner *did* investigate an employer under the Act and found violations, she lacks any statutory mechanism to enforce them, because "the Minnesota Legislature did not extend [the DLI Commissioner's] enforcement tools, like issuing compliance orders or initiating a civil action to enforce the Act." (Doc. 15, p. 4.) And any referral to Minnesota's Attorney General would be futile because he too has declared any present intention to investigate or enforce the Act. (Doc. 18.)

Finally, Plaintiffs' suggestion that the DLI Commissioner's connection to the Act is satisfied because DLI may direct individuals making inquiries about the Act to consult with a private attorney is simply unserious. (Doc. 23, p. 10.) If suggesting constituents speak with an attorney about their private legal rights is sufficient to establish the 'connection with enforcement' prong, then virtually any state official could be a proper defendant to enjoin any state law, no matter how far afield from their jurisdiction. Taken to its logical conclusion, Plaintiffs' argument would make the Commissioner of the Department of Agriculture a proper defendant to enjoin the Act if a wayward individual contacted his agency but told to consult with a private attorney about the matter. A willingness to refer

private parties to private counsel for legal advice related to the Act simply does not satisfy *Ex parte Young*'s 'connection with enforcement of the law' element. *See Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016) (holding that official's ability to direct appointments may affect who has a private right of action, but it has nothing to do with his prosecution of such an action.)

Here, where the court is adjudicating facts, rather than hypotheticals or plausibilities, Plaintiffs cannot show that the DLI Commissioner has a sufficient connection to enforcement of the Act to meet the *Ex parte Young* exception, and any claims against her must be dismissed. Even so, this Court does not need to resolve whether the DLI Commissioner is connected to enforcement of the Act, because Plaintiffs separately fail to demonstrate *Ex parte Young*'s second element. Accordingly, they are not entitled to the *Ex parte Young* exception, and their complaint is barred by sovereign immunity.

### D. A Preliminary Ruling in Ongoing Connecticut Litigation Is Neither Precedential Nor Persuasive.

Plaintiffs' claim that a hearing transcript and declaration in ongoing litigation over a similar Connecticut law should guide this motion's outcome because that court found that plaintiffs satisfied *Ex parte Young* on a motion to dismiss. (Doc. 23, p. 14-15.) The Connecticut case is distinguishable. There, the Connecticut state official submitted a declaration that explicitly stated his agency *would* investigate violations of the Connecticut law and, if a violation was found, *would* assess a civil penalty against an employer, *could* request enforcement by the Connecticut Attorney General, and *would* provide declaratory rulings whenever an employer sought guidance on whether their conduct violated the law.

8

(Doc. 24-2, ¶¶ 16, 18-19.)[3] Though the Connecticut official claimed enforcement of the challenged law was *unlikely*, he did not disclaim any present intent to enforce that law.

In stark contrast, in this case, both State Officers unequivocally declared they have not threatened anyone with investigation or enforcement of the Act and have no present intent to investigate or enforce the Act against Plaintiffs. (Doc. 18, ¶¶ 4-10; Doc. 19, ¶¶ 6-11.) Accordingly, the Connecticut district court considered materially different declarations from those before this Court and should not guide the outcome here.

Moreover, the Connecticut district court resolved its motion to dismiss under Second Circuit precedent, "disregard[ed the state official's] declaration" and "allowed the case to proceed because there exist state executive officials who retain authority to enforce it." (Doc. 23, p. 15.) (citations and emphasis omitted). As described above, Section I(A-B), *supra*., the State Officers' factual attack on jurisdiction *requires* Plaintiffs to produce evidence they face an imminent threat of the Act's enforcement. Whether the Connecticut district court's treatment of the defendants' motion to dismiss comports with Second Circuit precedent is irrelevant to the matter before this Court. Binding Eighth Circuit precedent guides this outcome, "because jurisdiction is a threshold question, judicial economy demands that the issue be decided at the outset," rather than deferring it to later stages of litigation. *Osborn,* 918 F.2d at 729. And, no matter what the Connecticut trial

---

[3] The declaration also stated that there was no evidence that any investigations has been conducted, or enforcement actions taken, under a prior version of the law. (Doc. 24-2, ¶¶ 14 & 20.) However, because challenged version of the law was adopted by Connecticut's legislature in 2022, the fact that Connecticut officials never investigated or enforced a different law for many years was simply irrelevant to whether the new, challenged law would be enforced. (Id., ¶ 15.)

9

court chose to do, when considering a Rule 12(b)(1) factual attack on subject matter jurisdiction, a court in this circuit cannot simply disregard the State Officers' declarations. Rather, the Eighth Circuit requires that, "[o]nce the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Id*. at 730.

Accordingly, the limited public record available from the Connecticut case is factually distinguishable, governed by different circuit precedent, and should not guide the outcome in this case.

### II. *WHOLE WOMAN'S HEALTH* DID NOT ELIMINATE *EX PARTE YOUNG'S* REQUIREMENT THAT PLAINTIFFS SHOW A CREDIBLE AND SPECIFIC THREAT OF ENFORCEMENT.

Ignoring the Eighth Circuit's daunting wall of precedent, Plaintiffs argue that the Supreme Court's opinion in *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) modified *Ex parte Young*'s hundred-year-old "threat of imminent enforcement" requirement, and they need to allege only a credible threat of enforcement. (Doc. 23, pp. 12–13.)[4]

---

[4] Plaintiffs import the wrong legal standard when they claim they need not "risk prosecution before challenging a statute under the First Amendment," and therefore State Officers' mere enforcement authority is sufficient for *Ex parte Young*'s application. (Doc. 23, p.13.) The "risk of prosecution" language comes from Article III's injury-in-fact analysis and is not part of the *Ex parte Young* analysis. In fact, the cases Plaintiffs cite address only Article III standing requirements, but do not mention *Ex parte Young* at all. (Doc 23, p. 14.) Not only do Plaintiffs answer the wrong question, but they also cite the wrong standard, because "the Eighth Circuit applies an imminence standard that is higher for *Ex parte Young* claims than for Article III standing." *Freeman*, 486 F Supp. 3d at 1310.

10

    **A.**    ***Whole Woman's Health* Addressed A "Facial" Challenge to Jurisdiction; Not The "Factual" Challenge Defendants Bring Here.**

In the same way that *Care Committee I* is distinguishable from *Care Committee II*, *Whole Woman's Health* is distinguishable from this case because it was decided in a "facial attack" under Rule 12(b)(1) where Rule 12(b)(6)'s plausibility standard applied, rather than a "factual attack" where the court must decide jurisdiction as a matter of fact. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 47 (2021) (finding that petitioners "*plausibly alleged*…that [they] will be the target of an enforcement action") (emphasis added).

In *Whole Woman's Health*, the Supreme Court dismissed several state officials who claimed, *inter alia*, that plaintiffs could not establish the *Ex parte Young*'s exception to sovereign immunity. Focusing solely on *Ex parte Young*'s first 'connection with enforcement' element, the Court dismissed most defendants with the exception of several state licensing officials. *Id*. at 45–46. But W*hole Woman's Health* does not address *Ex parte Young*'s 'imminence of enforcement' element at all.

Because the State Officers bring a factual attack under Rule 12(b)(1) in this case, and Rule 12(b)(6)'s plausibility standard does not apply here, *Whole Woman's Health* is inapposite.

    **B.**    ***Whole Woman's Health* Did Not Eliminate *Ex parte Young*'s Imminence of Enforcement Requirement.**

Despite Plaintiffs' assertion otherwise, *Whole Woman's Health* did not modify Ex *parte Young*'s 'threat of imminent enforcement' requirement. To the contrary, the Court "agree[s]…in principle" with Justice Thomas's concurrence that under *Ex parte Young*, "petitioners must show at least a credible and specific threat of enforcement." *Id*. at 47, 57.

11

*Whole Woman's Health* did not eliminate *Ex parte Young*'s 'threat of imminent enforcement' requirement; it reiterated it.

Nevertheless, Plaintiffs contend—without explanation or authority—that *Whole Woman's Health* overturned all precedent from the Eighth Circuit requiring plaintiffs to demonstrate a threat of imminent enforcement to establish the *Ex parte Young* exception. (Doc. 23, p. 15.) But Eighth Circuit precedent on this issue is consistent before and after *Whole Woman's Health*. For example, the Eighth Circuit relied on pre-*Whole Woman's Health* case law (*Care Committee II*) and cited *Whole Woman's Health* in its 2022 decision reiterating that "'*Ex parte Young* doctrine does not apply when the defendant official has *neither enforced nor threatened to enforce* the statute challenged as unconstitutional.'" *Freeman*, 33 F.4th at 992 (quoting *Care Committee II*, 766 F.3d at 797 (emphasis in original)), *cert denied sub nom. Christian Action League of Minn. v. Freeman*, 143 S. Ct. 304 (2022).

Thus, *Whole Woman's Health* did not lessen or eliminate *Ex parte Young*'s 'imminence of enforcement' requirement, and Plaintiffs' failure to meet their burden of proving an imminent threat of the Act's enforcement. Therefore, this Court lacks jurisdiction, and this action should be dismissed.

## III. PLAINTIFFS ARE NOT ENTITLED TO HAVE THIS CLAIM BROUGHT IN THIS FORUM AT THIS TIME.

Plaintiffs speculate that Minnesota sought to insulate the Act from pre-enforcement review by vesting primary enforcement of the Act in a private right of action. (Doc. 23, p. 13.) But "those seeking to challenge the constitutionality of state laws are not always able

12

to pick and choose the timing and preferred forum for their arguments" and the Supreme Court has "never recognized an unqualified right to pre-enforcement review of constitutional claims in federal court." *Whole Woman's Health*, 595 U.S. at 49. Indeed, "many federal constitutional rights are as a practical matter asserted typically as defenses to state-law claims, not in federal pre-enforcement cases like this one." *Id*. at 49-50.

Plaintiffs also complain that, even with no history or threats of State enforcement, the Act will nevertheless "chill" them in the exercise of their First Amendment rights. (Doc. 23, p. 15.) But here too, the Supreme Court rejects Plaintiffs' concern. "As our cases explain, the 'chilling effect' associated with a potentially unconstitutional law being 'on the books' is insufficient to 'justify federal intervention' in a pre-enforcement suit." *Whole Woman's Health*, 595 U.S. at 50 (quoting *Younger v. Harris*, 401 U.S. 37, 42, 50–51 (1971)). "Instead, this Court has always required proof of a more concrete injury and compliance with traditional rules of equitable practice." *Id*. (citing *Muskrat v. U.S.*, 219 U.S. 346, 361 (1911); *Ex parte Young*, 209 U.S. at 159–160). "The Court has consistently applied these requirements whether the challenged law in question is said to chill the free exercise of religion, the *freedom of speech*, the right to bear arms, or any other right." *Id*. (emphasis added).

But Plaintiffs cannot simply name the State Officers and request a ruling on the constitutionality of any law they even might be permitted to enforce or investigate. The *Ex parte Young* exception to sovereign immunity permits "nothing more than the pre-emptive assertion in equity of a defense that would otherwise have been available in the State's enforcement proceedings at law." *Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247,

13

262 (2011) (Kennedy, J., concurring). As such, the *Ex parte Young* doctrine applies only "[w]hen enforcement actions are *imminent* . . . and the moving party lacks the realistic option of violating the law once and raising its federal defenses," because in such circumstances "there is no adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992) (emphasis added).

Moreover, Plaintiffs' concern that granting the State Officers' motion lets the Act evade judicial review is meritless because other avenues exist to consider its constitutionality. As an initial matter, if the Court grants the State Officers' motion, the result is simply a dismissal without prejudice. *Hart v. United States*, 630 F.3d 1085, 1091 (8th Cir. 2011) (collecting cases). Should one or both of the State Officers—or some other state officer—threaten or commence enforcement proceedings, Plaintiffs can come right back to court and would likely be able to demonstrate the *Ex parte Young* exception. They simply cannot do so now. Likewise, should Plaintiffs find themselves defending against a claim brought by a private actor under the Act, they can assert any defenses, constitutional or otherwise, in the state or federal court where the suit is brought. All of this is to say is that Plaintiffs will get their day in court when the time is right, but that day is not today.

## CONCLUSION

Plaintiffs fail to demonstrate by a preponderance of the evidence that the *Ex parte Young* exception to sovereign immunity applies, as required to defeat this factual attack under Rule 12(b)(1). Accordingly, this Court lacks subject matter jurisdiction, and Plaintiffs' complaint must be dismissed.

Dated: April 18, 2024

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


/s/ Nick Pladson
NICK PLADSON
Assistant Attorney General
Atty. Reg. No. 0388148
BENJAMIN HARRINGA
Assistant Attorney General
Atty. Reg. No. 0399254

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 300-7083 (Voice)
(651) 296-7438 (Fax)
Nick.Pladson@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS