UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNESOTA CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC., NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC., and LAKETOWN ELECTRIC CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>KEITH ELLISON, in his official capacity as Attorney General of State of Minnesota, NICOLE BLISSENBACH, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry,<br><br>Defendants. | Court File No. 24-cv-00536 (KMM/ECW)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND COMPLAINT** |

## INTRODUCTION

*"You go to jail now if you [hold captive audience speeches] in Minnesota* because you can't intimidate people." Governor Walz, April 23, 2024.

In defiance of the First Amendment to the U.S. Constitution, as applied to state government actors through the Fourteenth Amendment, in 2023, the Minnesota Legislature passed, and putative Defendant Governor Timothy James Walz signed into law, Minn. Stat. § 181.531 (the "Act") banning employer speech, including speech regarding labor organizations. There is not even a pretense, much less a substantial argument, that the State of Minnesota has a "compelling interest" in banning such speech. In addition to violating the Constitution, the law is preempted by the National Labor Relations Act ("NLRA").

In their Motion to Dismiss, current Defendants Minnesota Attorney General Keith Ellison and Minnesota Commissioner of Department of Labor and Industry claim they

want nothing to do with this statute. In an effort to both allow the statute to chill speech but evade accountability for it, and conveniently dodge responsibility, they have stated, under penalty of perjury, that they have no intention to enforce the Act. (ECF Doc. Nos. 18 and 19.)

After this case was initiated and after the current Defendants claimed they had no intention to enforce the law, on April 23, 2024, Governor Walz, as Chief Executive Officer of the State of Minnesota, Commissioner Blissenbach's boss, and Attorney General Ellison's client, further chilled Plaintiffs' free speech rights and illustrated an intent to enforce the Act, stating unequivocally to hundreds of individuals at a North America's Building Trades Unions convention: "Minnesota was going to ban that practice, of having those captive anti-union meetings. ***You go to jail now if you do that in Minnesota*** because you can't intimidate people."

This Motion to Amend the Complaint, to directly hold Governor Walz responsible for what he plainly states will be the State's mission in banning speech, follows. Plaintiffs seek to amend the Complaint to add these relevant facts and add Governor Walz as a party to this matter, for his part in overseeing enforcement of the Act.[1] Fed. R. Civ. P. 15(a)(2) requires that courts should freely give leave to amend when justice so requires, and a presumption of liberality applies. Plaintiffs respectfully request the Court grant the Motion to Amend the Complaint.

**PROCEDURAL POSTURE**

---

[1] Copies of the proposed First Amended Complaint, in both final format and redline format, are attached as *Exhibit B* and *Exhibit C*, respectively, to the accompanying Declaration of Thomas Revnew.

2

Plaintiffs filed this suit on February 20, 2024 against Defendants AG Ellison and Commissioner Blissenbach, alleging the Act is unconstitutional and preempted by the National Labor Relations Act. Individually, each Defendant has the power to enforce the Act. On March 14, 2024, Defendants filed a Motion to Dismiss this action, on the grounds that this Court lacks subject-matter jurisdiction. Plaintiffs responded to Defendants' Motion to Dismiss on April 4, 2024, and Defendants replied on April 18, 2024. Less than a week after Defendants filed their reply, facts relevant to this matter came to light (i.e., Governor Walz's speech), and Plaintiffs accordingly seek to amend the Complaint.

## STATEMENT OF RELEVANT FACTS

On May, 17, 2023 Governor Tim Walz signed into law, Minn. Stat. § 181.531. In relevant part, the Act reads as follows:

> **Subdivision 1. Prohibition.** An employer or the employer's agent, representative, or designee must not discharge, discipline, or otherwise penalize or threaten to discharge, discipline, or otherwise penalize or take any adverse employment action against an employee:
>
> (1) because the employee declines to attend or participate in an employer-sponsored meeting or declines to receive or listen to communications from the employer or the agent, representative, or designee of the employer if the meeting or communication is to communicate the opinion of the employer about religious or political matters;
>
> (2) as a means of inducing an employee to attend or participate in meetings or receive or listen to communications described in clause (1); or
>
> (3) because the employee, or a person acting on behalf of the employee, makes a good-faith report, orally or in writing, of a violation or a suspected violation of this section.
> …
> **Subd. 3. Notice.** Within 30 days of August 1, 2023, an employer subject to this section shall post and keep posted, a notice of employee rights under this section where employee notices are customarily posted.
>
> **Subd. 4. Scope.** This section does not:

3

(1) prohibit communications of information that the employer is required by law to communicate, but only to the extent of the lawful requirement;

(2) limit the rights of an employer or its agent, representative, or designee to conduct meetings involving religious or political matters so long as attendance is wholly voluntary or to engage in communications so long as receipt or listening is wholly voluntary; or

(3) limit the rights of an employer or its agent, representative, or designee from communicating to its employees any information, or requiring employee attendance at meetings and other events, that is necessary for the employees to perform their lawfully required job duties.

**Subd. 5. Definitions.** For the purposes of this section:

(1) "political matters" means matters relating to elections for political office, political parties, proposals to change legislation, proposals to change regulations, proposals to change public policy, and the decision to join or support any political party or political, civic, community, fraternal, or labor organization; and

(2) "religious matters" means matters relating to religious belief, affiliation, and practice and the decision to join or support any religious organization or association.

AG Ellison and Commissioner Blissenbach have authority to enforce the Act. *See* Minn. Stat. §§ 175.20 ("The commissioner or an authorized representative may enter . . . and inspect places of employment . . . , and investigate facts, conditions, practices or matters as the commissioner deems appropriate to enforce the laws within the commissioner's jurisdiction and to carry out the purposes of this chapter and chapter 177, 181, 181A, or 184."); 181.1721 ("In addition to the enforcement of this chapter by the department, the *attorney general may enforce this chapter* under section 8.31.") (emphasis added). The language of § 181.1721 gives the attorney general enforcement authority not over certain sections of chapter 181, or certain provisions, but over the entirety of chapter 181, including § 181.531.

4

On April 23, 2024, Minnesota Governor Tim Walz gave a speech in his official capacity[2] in front of a legislative conference for the North America's Building Trades Unions, in which he stated (referring to the Act): "Minnesota was going to ban that practice, of having those captive anti-union meetings. You go to jail now if you do that in Minnesota because you can't intimidate people." (Declaration of Thomas Revnew, *Exhibit A*)[3]. Governor Walz, who received a standing ovation for his comments and maintains authority to remove and appoint the Commissioner of the Department of Labor and Industry, Minn. Stat. § 4.04, subd. 1, directly contradicted Commissioner Blissenbach's and Attorney General Ellison's representations that they do not plan to enforce the Act.

Since its passage, the Act has and continues to chill the free speech rights of Minnesota employers, who fear official enforcement and penalties if they hold meetings or send messages about broadly and vaguely defined "political" or "religious" matters. Governor Walz' comments have only further cemented that chilling effect. Indeed, Laketown Electric previously conducted paid-time meetings in which it has shared with employees its opinion with respect to unions and other political matters, such as political candidates and state regulations. (Complaint, ECF Doc. No. 1 at ¶ 17). MNABC (a statewide trade organization which represents the interests of over 300 construction industry employers) members have similarly communicated and planned to communicate in the future with employees with respect to other political matters, such as political positions of certain labor organizations. (Complaint, ECF Doc. No. 1 at ¶ 15). NFIB members have also

---

[2] Governor Walz was presented himself as the Governor of Minnesota during the speech.
[3] The relevant portion of Governor Walz' speech can be found from 3:30 to 4:00 of *Exhibit A*.

conducted mandatory paid-time meetings to communicate opinions on political matters, and planned to do so in the future. (Complaint, ECF Doc. No. 1 at ¶ 16). Laketown, MNABC members, and NFIB members communicate their opinions on such subjects to employees because they wish to inform their workforce how certain political positions of labor organizations or political candidates, or state laws or regulations, will negatively impact Laketown and/or other MNABC and NFIB members and their employees. (Complaint, ECF Doc. No. 1 at ¶¶ 15-17). Because of the vitally important nature of these communications, Laketown and other MNABC members and NFIB members expect and require their employees to attend these meetings, and expect and require their employees to otherwise listen to or review communications on these topics. (*Id.*)

Governor Walz' recent comments have further cemented the fear of State enforcement of the Act and directly contradict Defendants' representations that they will not enforce it.

## ARGUMENT

**I.** **PLAINTIFFS SHOULD BE GIVEN LEAVE TO AMEND THE COMPLAINT GIVEN THE CRITICAL NATURE OF THE FACTS THEY SEEK TO ADD.**

Federal Rule of Civil Procedure 15(a)(2) provides:

> (a) AMENDMENTS BEFORE TRIAL.
>
> * * *
>
> (2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Indeed, the Supreme Court has explained the purposes of Rule 15(a) as follows:

6

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of such an apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962). Further, although "parties do not have an absolute right to amend their pleadings, even under this liberal standard," *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 715 (8th Cir.2008), the Court begins its review "with a presumption of liberality." *DeRoche v. All Am. Bottling Corp.,* 38 F.Supp.2d 1102, 1106 (D.Minn.1998).

Here, Plaintiffs seek to add factual allegations to the Complaint which directly relate to Defendants' pending Motion to Dismiss – specifically, as to whether Defendants (especially Commissioner Blissenbach, who serves at the Governor's pleasure) will enforce Minn. Stat. § 181.531. Commissioner Blissenbach, for her part, represents that she has no intention of enforcing the statute – but Commissioner Blissenbach may be removed from her office by Governor Walz, who has stated a clear intent to enforce the statute. Similarly, Governor Walz is entitled under the Minnesota Constitution to seek and obtain the representation of Attorney General Keith Ellison and his Office in ensuring that the laws are faithfully executed and enforced. Minn. Const. Art. V, § 3; Minn. Stat. § 8.06 and § 8.31; *cf. e.g., State ex rel. Lichtscheidl v. Moeller*, 249 N.W. 330, 333 (Minn. 1933)

7

(finding that as the State of Minnesota's Chief Executive Officer, the Governor, under his duties of ensuring that the laws are faithfully executed, "enforce[s]" the laws.)

Indeed, it is notable that Governor Walz threatened *criminal* prosecution for violation of the Act, as opposed to enforcement via a private right of action – a criminal prosecution (though not allowed for under the Act) still promises enforcement of some nature by the State.  For the same reason, Plaintiffs seek to add Governor Walz as a Defendant – Governor Walz' authority to remove and appoint the Commissioner of the Department of Labor and Industry (and/or seek and obtain representation of Attorney General Keith Ellison and his office to ensure the laws are faithfully executed) gives him the requisite connection to enforcement of the Act for purposes of *Ex Parte Young*.  *See In re EpiPen Direct Purchaser Litig.*, No. 20-CV-00827 ECT/JFD, 2021 WL 4892231, at *3 (D. Minn. Oct. 20, 2021) ("While plaintiffs do not have an absolute or automatic right to amend, the Eighth Circuit has repeatedly held that a motion to amend may be denied ***only if*** there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.") (citing *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013)) (internal citations and quotations omitted) (emphasis added).

None of these reasons for denial of a motion to amend present themselves here. Governor Walz' comments occurred only one week ago, and Plaintiffs have timely worked to move to amend the Complaint accordingly.  The new facts bear directly on Defendants' Motion to Dismiss and related representations regarding enforcement of the statute.

8

Hence, applying the presumption of liberality regarding amendment, and understanding the critical nature of the facts Plaintiffs seek to add to the Complaint, Plaintiff's proposed amendments should be adopted.

## CONCLUSION

Governor Tim Walz has directly contradicted Defendants' representations regarding their intent (or alleged lack thereof) to enforce the Act. These facts bear directly on Defendants' Motion to Dismiss, and give Governor Walz the requisite connection with enforcement of the statute for purposes of his inclusion as a party. Plaintiff respectfully requests that its Motion to Amend the Complaint be granted under Fed. R. Civ. P. 15(a)(2).

Dated: April 30, 2024

*/s/ Thomas R. Revnew*
Thomas R. Revnew, Bar No. 0295620
trevnew@littler.com
Kurt J. Erickson, Bar No. 158380
kerickson@littler.com
Jacob D. Multer, Bar No. 0401877
jmulter@littler.com

LITTLER MENDELSON, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, MN  55402.2136
Telephone:   612.630.1000
Facsimile:    612.630.9626

*Attorneys for Plaintiffs*