UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Chapter of Associated Builders and Contractors, Inc., National Federation of Independent Business, Inc., and Laketown Electric Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>Keith Ellison, in his official capacity as Attorney General of Minnesota, and Nicole Blissenbach, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry,<br><br>Defendants. | Case No. 0:24-cv-00536 (KMM/ECW)<br><br><br><br>**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND** |

Plaintiffs' motion to add Minnesota Governor Tim Walz is a futile attempt to bring this case under the ambit of *Ex parte Young*'s exception to Eleventh Amendment sovereign immunity. Plaintiffs' motion boils down to three points: (1) Governor Walz's recent comments indicate a threat to enforce the Act; and notwithstanding the State Officers' declarations disclaiming any present intent to enforce the Act, Governor Walz can override them (2) by appointing a new DLI Commissioner who will enforce the Act, or (3) directing the Attorney General to enforce the Act. Each of these assertions is legally flawed. Because Plaintiffs' proposed First Amended Complaint[1] does not establish this Court's subject matter jurisdiction, Plaintiffs' motion is futile.

---

[1] *See* Plaintiffs' Proposed First Amended Complaint (hereafter "FAC"). (Doc. No. 31-1, Ex. C.)

## I.  PLAINTIFFS' MOTION TO AMEND IS FUTILE BECAUSE IT DOES NOT ESTABLISH SUBJECT MATTER JURISDICTION.

"Futility is always a basis to deny leave to file an amended complaint." *See A.H. v. St. Louis Cty, Missouri*, 891 F.3d 721, 730 (8th Cir. 2018) (citation omitted). An amendment is futile when "the proposed amended complaint does not establish a court's subject matter jurisdiction over the action." *See Am. Ins. Co. v. St. Judge Medical, Inc.*, 597 F. Supp. 2d 973, 979 (D. Minn. 2009) (citing *Longie v. Spirit Lake Tribe,* 400 F.3d 586, 588 n.3 (8th Cir. 2005)).

"[W]hen a court denies leave to amend on the ground of futility, it means that the court reached a legal conclusion that the amended complaint could not withstand a Rule 12 motion." *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).[2] Because the State Officers contend that this Court lacks subject matter jurisdiction to hear this case, and because they contend that Plaintiffs' motion to amend does not remedy these deficiencies, Plaintiffs FAC must meet the standards applicable to a Rule 12(b)(1) motion. Courts distinguish between a Rule 12(b)(1) 'facial attack', which carries with it the benefit of Rule 12(b)(6)'s more liberal plausibility standard, and a Rule 12(b)(1) 'factual attack', which does not. *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (providing

---

[2] When a plaintiff moves to amend a complaint after a motion to dismiss has been filed, as Plaintiffs did here, the court must first address the motion to amend. *See Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002).

nonmoving party in a Rule 12(b)(1) 'facial attack' the safeguards in 'defending against a motion brought under Rule 12(b)(6))[3].

Here, Plaintiffs' FAC does not establish this Court's subject matter jurisdiction, and does not establish that Minnesota's Governor is a proper party. Plaintiffs' FAC fails to establish (or allege) a waiver of the government's sovereign immunity, and therefore even Rule 12(b)(6)'s more liberal plausibility standard cannot rescue their allegations from futility.

## II. GOVERNOR WALZ DID NOT THREATEN TO ENFORCE THE ACT AGAINST PLAINTIFFS.

An analysis of the FAC starts with Plaintiffs' proposed additional facts. They allege Minnesota's Governor announced his intent to enforce the Act when he told the building trades union: "Minnesota was going to ban that practice, of having those captive anti-union meetings. You go to jail now if you do that in Minnesota because you can't intimidate people."[4] That's it.

Note two things about this comment. First, the Act itself does not impose any criminal penalties, which Plaintiffs concede.[5] *See* Minn. Stat. § 181.531, subd. 2 (identifying the Act's civil remedies). Thus, despite the Governor's incorrect statement of law, no employer would ever "go to jail" in Minnesota for violating the Act, and this factual

---

[3] Defendant State Officers' motion to dismiss Plaintiffs' original complaint is a "factual attack" under Rule 12(b)(1). *See* Doc Nos. 14-20, 26.

[4] The speech in question occurred on April 23, 2024, after briefing on the underlying motion to dismiss had concluded.

[5] (Doc. No. 30 at 8).

3

allegation is not entitled to any presumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) ("the plaintiffs' assertion of an unlawful agreement was a 'legal conclusion'" and, as such, was not entitled to the assumption of truth.)

Second, the Governor does not make any threat at all to enforce the Act at all, much less against Plaintiffs, and he does not threaten or direct anyone else to do so. At most, Governor Walz's comments permit the inference that the Minnesota Legislature sought to pass the Act, and in fact did so. *Iqbal*, 556 U.S. at 679 ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief.").

Minnesota's Governor, a nonlawyer, spoke in Washington, D.C. to a national convention of political supporters – his union brothers and sisters. Unsurprisingly, Plaintiffs promptly pounced. The Governor's enthusiasm for the Act, and his mistaken statement of the legal consequences for its violators, however, cannot overcome state sovereign immunity provided under the U.S. Constitution. Even when a Governor advocates for a law and urges that it "be vigorously enforced … [t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022).

Nevertheless, as the following discussion and the undisputed record evidence indicate, even if the Governor's statement could be construed as a threat to enforce the Act, he lacks the requisite connection to enforcement of the Act, and cannot lawfully compel the State Officers to do so on his behalf.

4

### III.   GOVERNOR WALZ IS IMMUNE FROM THE PROPOSED CLAIMS.

Plaintiffs cannot sue Governor Walz in federal court to enjoin the Act because he has no connection to its enforcement. The Eleventh Amendment bars suits brought against state officials if "the state is the real, substantial party in interest." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984). Under *Ex Parte Young*, however, a suit to enjoin a state official's enforcement of state legislation is not a suit against the State, and is thus not barred by the Eleventh Amendment, *so long as* the official has "some connection with the enforcement of the act." 209 U.S. at 155–60. Without that connection, the officer would be sued merely "as a representative of the state" in an impermissible attempt to "make the state a party." *Id*. at 157.

For *Ex parte Young* purposes, a state official's requisite connection with a law's enforcement may be "specially created by the act itself," or come from "the general law." 209 U.S. at 157. As to the former, the Act does not authorize the Minnesota Governor to enforce its provisions, so that connection is not available to Plaintiffs. *See generally*, Minn. Stat. § 181.531.

Thus, to add Governor Walz to this suit, Plaintiffs must demonstrate that his connection to enforcement of the Act comes from his general executive authority. 209 U.S. at 157. It is insufficient to merely name the governor as a defendant and point to his position as the state's chief executive. *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (finding Missouri governor's "general executive responsibility" to enforce the law "is an

insufficient connection to the enforcement of a statute to avoid the Eleventh Amendment"). But that is all that Plaintiffs do.[6]

Plaintiffs do not assert that Governor Walz's authority as governor involves enforcing the Act and they cannot establish his connection to the Act's enforcement. Plaintiffs' efforts to connect Governor Walz to the Act's enforcement through the DLI Commissioner and the Attorney General fare no better.

    **a.    Governor Walz's Ability to Appoint a New DLI Commissioner Does Not Connect Him to Enforcement of the Act.**

Noting the Governor's appointment power, Plaintiffs speculate that Governor Walz could, at some indeterminate point in the future, replace DLI Commissioner Blissenbach[7] with an appointee who may commence enforcing the Act, and because this sequence of events is theoretically possible, his connection to the Act is established. (Doc. No. 30 at 7) (citing Minn. Const. Art. V, § 3).[8]

---

[6] (Doc. No. 30 at 2)("… Governor Walz, as Chief Executive Officer of the State of Minnesota, Commissioner Blissenbach's boss, and Attorney General Ellison's client…"); *Id*. at 3 n.2 ("Governor Walz was (sic) presented himself as the Governor of Minnesota during the speech."); *Id*. at 7 ("…Commissioner Blissenbach, who serves at the Governor's pleasure... Commissioner Blissenbach may be removed from her office by Governor Walz"); *Id*. ("Governor Walz is entitled under the Minnesota Constitution to seek and obtain the representation of Attorney General Keith Ellison and his Office in ensuring that the laws are faithfully executed and enforced.").

[7] Plaintiffs concede that DLI Commissioner has no present intent to enforce the Act. (Doc. No. 30 at 7.)

[8] The State Officers also contend that the DLI Commissioner – no matter who holds the office – lacks a statutory mechanism to enforce the Act at all. (Doc. No. 15 at 3-4, 8-9.) Thus, whether Governor Walz replaced Commissioner Blissenbach with a person who intended to enforce the Act, both he and the DLI Commissioner's successor lack the requisite connection with its enforcement.

That is incorrect. A governor's general executive authority to appoint and direct department leaders is insufficient to establish *Ex parte Young*'s requisite 'connection with enforcement' element. *See Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960 (8th Cir. 2015) (finding the executive authority of the Arkansas governor to manage appointees, Ark. Const. art. VI §§ 2, 7, insufficient to establish *Ex parte Young*'s 'connection with enforcement' element); *Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016) (finding that official's ability to appoint members who may be able to enforce law was too attenuated to meet "connection with enforcement" element of *Ex parte Young*). Indeed, a contrary ruling would make every governor a proper defendant in every federal court challenge to the thousands of laws enforced by their numerous appointees.

Moreover, the State Officers contend in their motion to dismiss that the DLI Commissioner – no matter who holds the office – lacks a statutory mechanism to enforce the Act at all. (Doc. No. 15 at 3-4, 8-9.) Thus, whether Governor Walz replaced Commissioner Blissenbach with a person who intended to enforce the Act, any successor DLI Commissioner would still lack the requisite connection with its enforcement to establish the *Ex parte Young* exception.

Even so, Governor Walz's ability to appoint a successor to Commissioner Blissenbach[9] – with whatever change in enforcement priorities that may bring – does not establish a sufficient connection between the Governor and the Act's enforcement to overcome the Eleventh Amendment.

---

[9] Plaintiffs do not even allege that the Governor is even thinking about doing this. Just that, in a hypothetical series of events, it is possible – someday.

### b. Governor Walz Cannot Direct Attorney General Ellison to Enforce the Act.

In Plaintiffs' last – but equally flawed – argument, they assert that "Governor Walz is entitled under the Minnesota Constitution to seek and obtain the representation of Attorney General Keith Ellison and his Office in ensuring that the laws are faithfully executed and enforced." (Doc. 30 at 7).

Nope. Minnesota's Governor cannot direct the Attorney General to enforce the Act. The Attorney General is a separately elected constitutional officer who has independent power to bring actions in the name of the State of Minnesota. *See Slezak v. Ousdigian*, 260 Minn. 303, 308, (1961), *overruled on other grounds by Christensen v. Minneapolis Mun. Emps. Ret. Bd.*, 331 N.W.2d 740 (Minn. 1983) ("The attorney general['s]…powers are not limited to those granted by statute but include extensive common-law powers inherent in his office…and the courts will not control the discretionary power of the attorney general in conducting litigation for the state."); *State ex rel. Peterson v. City of Fraser*, 191 Minn. 427, 431 (1934) (finding the Attorney General's "discretion as to what litigation shall or shall not be instituted by him is beyond the control of any other officer or department of the state."). The only statutory exception is that the Governor may, in a narrow set of circumstances, direct the Attorney General to prosecute a certain *criminal* case. *See* Minn. Stat. § 8.01.[10] But Governor Walz cannot direct the Minnesota Attorney General to bring a civil action to enforce the Act.

---

[10] "Whenever the governor shall so request, in writing, the attorney general shall prosecute any person charged with an indictable offense, and in all such cases may attend upon the grand jury and exercise the powers of a county attorney." Minn. Stat. § 8.01.

8

The Act's primary enforcement mechanism is its private right of action. Minn. Stat. § 181.531, subd. 2. This Act provides prevailing plaintiffs the ability to recover attorney's fees and costs, ensuring that Minnesotans will be able to find members of the private bar to represent them in these private enforcement actions. *Id*.

True, Minnesota's Attorney General may choose to enforce the Act. *See* Minn. Stat. § 181.1721 ("In addition to the enforcement of this chapter by the department, the attorney general *may* enforce this chapter under section 8.31.") (emphasis added). But that's true of every law in Chapter 181. And here, with respect to the Act specifically, the Attorney General's undisputed declaration disclaims any present intent to exercise that discretion. (Doc. No. 18.) Indeed, the Attorney General has not even received any complaints related to the Act, and has not conducted any investigations into the Act's alleged violation. (Id.) Furthermore, Plaintiffs do not even allege that Governor Walz has threatened to direct or actually directed the Attorney General to do so, even if he could.[11]

If Minnesota's Attorney General were to choose to bring an enforcement action under the Act, he would decide when and where, not Minnesota's Governor.[12] Because Governor Walz lacks the constitutional or statutory authority to override the Attorney

---

[11] The Governor is entitled to the representation by the Attorney General *in defense* of matters relating to his official duties, but that statute does not apply here because Plaintiffs are concerned with the Act's affirmative enforcement. *See* Minn. Stat. § 8.06.

[12] Plaintiffs seem to suggest the State Officers' presently declining to enforce the Act, and declining a hypothetical directive from the Governor to do so, might conflict with their duties under the Minnesota Constitution or other Minnesota statutes. But these are quintessentially inappropriate questions for the federal judiciary. *Pennhurst*, 465 U.S. at 106 ("On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.")

General's prosecutorial discretion, he lacks a sufficient connection to the Act's enforcement vis a vis the Attorney General. Therefore, because Plaintiffs cannot establish the *Ex parte Young* exception to sovereign immunity, they cannot add Governor Walz to this lawsuit.

## CONCLUSION

The comments by Minnesota's Governor do not overcome Eleventh Amendment sovereign immunity because they do not reflect any actual threat to enforce or direct enforcement of the Act. And even if the Governor had stated a desire to enforce the Act, he lacks a sufficient connection to the Act to meet the *Ex parte Young* exception. Plaintiffs' proposed FAC is therefore futile, and their motion to amend should be denied.

Dated:  May 7, 2024                                   Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota


/s/  Nick Pladson
NICK PLADSON
Assistant Attorney General
Atty. Reg. No. 0388148
BENJAMIN HARRINGA
Assistant Attorney General
Atty. Reg. No. 0399254

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 300-7083 (Voice)
(651) 296-7438 (Fax)
Nick.Pladson@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS