## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| MINNESOTA CHAPTER OF ASSOCIATED BUILDERS AND CONTRACTORS, INC., NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC., and LAKETOWN ELECTRIC CORPORATION, | Case No. 0:24-cv-00536 (KMM/ECW) |
| Plaintiff, | |
| vs. | |
| TIMOTHY JAMES WALZ, in his official capacity as Governor of the State of Minnesota, KEITH ELLISON, in his official capacity as Attorney General of Minnesota, NICOLE BLISSENBACH, in her official capacity as the Commissioner of the Minnesota Department of Labor and Industry, | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION TO DISMISS** |
| Defendants. | |

## PREFACE

On May 31, 2024, Plaintiffs filed a Second Amended Complaint ("SAC") (Doc. 41)[1] making three material changes to their original complaint. First, Plaintiffs sued Minnesota Governor Tim Walz in his official capacity. SAC ¶ 18. Second, Plaintiffs identify a recent amendment to Section 181.531, the law challenged here, which directs DLI Commissioner Nicole Blissenbach to design an educational poster regarding workers'

---

[1] Plaintiffs' amended complaint is captioned "Second Amended Complaint." (Doc. 41) Technically this is only the first amended complaint. Defendants refer to it by Plaintiffs' title to minimize confusion.

rights enshrined in the challenged law. SAC ¶ 38; *see also*, Act of May 17, 2024, Reg. Sess., ch. 110, § 3. Third, Plaintiffs add allegations regarding comments Governor Walz made at a trade union meeting. SAC ¶¶ 32–37.

Beyond these three changes, Plaintiffs' complaint is functionally identical to their original complaint and, like their first, fails to establish this Court has subject matter jurisdiction to hear this case. Defendants therefore renew their Rule 12(b)(1) factual attack on this Court's subject matter jurisdiction.

## INTRODUCTION

On August 1, 2023, Minnesota barred employers from forcing workers to listen to their political or religious opinions when those communications are not related to their jobs or otherwise required by law. *See* Minn. Stat. § 181.531 ("the Act"). The Act does not prohibit employers from communicating their views on religion or politics to their employees, it simply prohibits employers from taking adverse employment actions against employees who object to being forced to listen to them. *Id*. Plaintiffs—a single Minnesota employer and two trade associations—claim a First Amendment right to *force* employees to listen to their political or religious opinions, and *fire* those who object. SAC, ¶¶ 1-6, 10.

Plaintiffs sued Minnesota Governor Tim Walz ("Governor Walz"), Minnesota Attorney General Keith Ellison ("Attorney General"), and Minnesota Department of Labor and Industry ("DLI") Commissioner Nicole Blissenbach ("Commissioner Blissenbach") (collectively "State Officers"), seeking a declaration that the Act is unconstitutional and to enjoin them from enforcing the Act. SAC ¶¶ 10, 18-20.

Despite amending their complaint, Plaintiffs still sued the wrong parties.

Governor Walz—Plaintiffs' latest addition to the defense—has no authority to enforce the Act and has not threatened its imminent enforcement.

Commissioner Blissenbach cannot compel compliance with the Act, and therefore lacks sufficient connection to its *enforcement*. While Commissioner Blissenbach may have statutory authority to investigate employer compliance with the Act, and is required to print up "know your rights" posters for employers, such activities are not equivalent to enforcing the Act. Commissioner Blissenbach's role in the statutory scheme means little absent an independent ability to compel compliance or remedy violations. And, in any event, Commissioner Blissenbach's uncontroverted declaration unequivocally refutes any present intent to investigate Plaintiffs or otherwise enforce the Act.

That Governor Walz appointed Commissioner Blissenbach and therefore *could* direct her to enforce the Act is irrelevant. Governor Walz has not done so. *Supplemental Declaration of Nicole Blissenbach,* ¶ 4. Arguing that Governor Walz could replace Commissioner Blissenbach with someone who *would* enforce the Act is rank speculation. *If* that happened in the future, Plaintiffs could potentially renew their complaint, but they cannot proceed against Commissioner Blissenbach now.

Third and finally, it is undisputed that Minnesota's Attorney General *could* enforce the Act if he chose to. However, the undisputed record evidence demonstrates that he has no present intent to enforce the Act, and no other State Officer has the power to override Attorney General Ellison's decision.

Neither Governor Walz nor Commissioner Blissenbach have a sufficient connection to the Act's enforcement to make them proper defendants in this case. Attorney General

Ellison and Commissioner Blissenbach have disclaimed any past or present intent to enforce the Act, and none of these State Officers have threatened to enforce it against Plaintiffs or any other Minnesota employer. Therefore, Plaintiffs cannot – as a factual matter – meet *Ex parte Young*'s exception to the State Officers' sovereign immunity and the Eleventh Amendment bars this suit. Accordingly, this Court lacks subject matter jurisdiction and Plaintiffs' complaint must be dismissed.

## STATEMENT OF FACTS

### A. THE ACT LIMITS EMPLOYER RETALIATION, NOT SPEECH.

Despite its name, the "Employer-Sponsored Meetings or Communication" law ("the Act") does not regulate speech at all. The Act simply regulates *when* a Minnesota employer can *force* and *fire* an employee who declines to receive communications about their employers' religious or political beliefs. *See generally*, Minn. Stat. § 181.531.

The Act's application is straightforward. Unless employees need to receive communications about their employer's religious or political opinions to perform the essential functions of their job, or such communications are otherwise required by law, an employer cannot discipline, discharge, or otherwise penalize employees who refuse to receive them. *Id*. Like numerous state and federal employment laws, the Act regulates the employer-employee relationship,[2] and is enforced through a private right of action. Minn. Stat. § 181.531, subd. 2.

_____

[2] Several Minnesota employment laws, like the Minnesota Whistleblower Act, operate the same way. *See* Minn. Stat. § 181.932, subd. 1(4) (forbidding employers from discharging or otherwise penalizing an employee for refusing to perform an action the employee has
(Footnote Continued on Next Page)

### B. The Act's 2024 Amendment.

On May 17, 2024, the Act was amended to require Commissioner Blissenbach to create a notice of employee rights under the Act. *See*, Act of May 17, 2024, Reg. Sess., ch. 110, § 3. As originally passed, the Act required employers to post a notice of employee rights in a location where workplace notices are customarily posted. Minn. Stat. § 181.531, subd. 3 (2023). The Act did not identify standard content employers needed to include in the notice; it required employers to create their own. *Id*. To ensure accuracy and eliminate the burdens of creating a notice, the Minnesota Legislature directed Commissioner Blissenbach to create a notice of employee rights under the Act for employers to use in their workplaces. *See* Act of May 17, 2024, Reg. Sess., ch. 110, § 3. The amendment does not go into effect until October 1, 2024. *Id*.

DLI regularly creates and provides employers with workplace notices regarding an array of state and federal workplace laws and services, even for laws DLI does not enforce.[3] *Supplemental Declaration of Nicole Blissenbach* ("*Blissenbach Supp. Decl.*") ¶ 6. Currently, DLI provides employers—free of charge—with 16 different workplace notices in as many as 34 languages on various topics ranging from mandatory compliance with

---

objective reason to believe is unlawful); *see also*, Minn. Stat. § 363A.15 (forbidding employers from engaging in retaliation against employees who oppose acts made unlawful under the Minnesota Human Rights Act).

[3] *See* Minnesota Department of Labor & Industry website, https://www.dli.mn.gov/posters (last visited June 12, 2024).

federal law to state services provided by the Minnesota Department of Veterans Affairs. (*Id.*)

### C. MINNESOTA'S GOVERNOR HAS NO AUTHORITY TO ENFORCE THE ACT.

Governor Walz must "take care that the laws be faithfully executed," Minn. Const. Art V, § 3. He does not, however, have any authority to enforce the Act. Minn. Stat. § 181.531.

Governor Walz has the power to appoint and remove members of his cabinet, including Commissioner Blissenbach, with or without cause.[4] *See* Minn. Const. Art V, § 3; Minn. Stat. § 4.04.

### D. MINNESOTA'S GOVERNOR TOUTED PASSAGE OF THE ACT, BUT DID NOT THREATEN TO ENFORCE IT OR DIRECT ANY STATE OFFICER TO DO SO.

On April 23, 2024, in a speech to a meeting of the building trades unions, Governor Walz referenced the Act in two sentences: "Minnesota was going to ban that practice, of having those captive anti-union meetings. You go to jail now if you do that in Minnesota because you can't intimidate people." SAC ¶¶ 32, Ex. A. This was an incorrect statement of law from Governor Walz, who is not a lawyer. As Plaintiffs concede, the Act does not contain criminal penalties of any kind. SAC, ¶ 37.

---

[4] Minn. Stat. § 15.06, subds. 2, 4. Currently Minnesota's Senate is evenly divided due to the resignation of one member of the majority caucus on June 6, 2024, which will not be filled until a special election on November 5, 2024. *See* "*Minnesota governor calls special election after State Sen. Kelly Morrison resigns amid congressional run.*" https://www.cbsnews.com/minnesota/news/minnesota-senate-special-election-kelly-morrison/ (last visited June 12, 2024).

Governor Walz's statement does not contain any threat to enforce the Act against Plaintiffs or any other employer. Governor Walz's comments do not reflect any command to any State Officer to enforce the Act. SAC ¶ 32, Ex. A. To date, Governor Walz has not, at any time, given Commissioner Blissenbach a directive to threaten or commence any investigation or enforcement proceeding under the Act. *Supplemental Declaration of Nicole Blissenbach*, ¶ 4. Likewise, there is no evidence that Governor Walz has ever called on Attorney General Ellison to enforce the Act.

### E. COMMISSIONER BLISSENBACH'S ABILITY TO INVESTIGATE *COMPLIANCE* WITH THE ACT IS NOT EQUIVALENT TO *ENFORCEMENT* OF THE ACT.

While Commissioner Blissenbach is empowered to generally investigate and carry out the purposes of Minnesota Statutes Chapter 181, the Minnesota Legislature did not extend her enforcement tools, like issuing compliance orders or initiating a civil action, to enforce the Act. *See* Minn. Stat. § 175.20 (granting the commissioner general investigative authority across Minnesota statutes chapters 175, 177, 181, 181A, and 184); Minn. Stat. § 177.27, subds. 4–5 (cataloguing the sections of Chapters 177, 179, 181, and 268B where the DLI commissioner may issue compliance orders or bring actions; Section 181.531 excluded). There is no statutory procedure for any DLI commissioner to enforce the Act. The Act only mentions DLI's commissioner in its directive to create a "Know Your Rights" poster for employees. *See* Minn. Stat. § 181.531, subd. 3(a-b) (*as amended*, Act of May 17, 2024, Reg. Sess., ch. 110, § 3.)

When the Minnesota Legislature debated the Act in 2023, DLI explained that it did not have enforcement authority over its provisions. *See Declaration of Commissioner*

*Nicole Blissenbach* ("*Blissenbach Decl.*"), ¶¶ 3-5, Exhibit A, p.4-5, Exhibit B, p.4-5. Any individuals contacting DLI about potential violations of the Act would be directed to private counsel. (Id.) Consistent with DLI's representations to the Minnesota Legislature, Commissioner Blissenbach has never investigated, is not currently investigating, and has no present intention to investigate any Minnesota employer, including Plaintiffs, for any alleged violations of the Act. *Blissenbach Decl.*, ¶¶ 10-11; *Blissenbach Supp. Decl.*, ¶¶ 7-11. Likewise, Commissioner Blissenbach has never enforced or threatened to enforce the Act against any Minnesota employer and has no statutory procedure or mechanism to do so. *Blissenbach Decl.*, ¶¶ 6-7; *Blissenbach Supp. Decl.*, ¶ 7.

### F. MINNESOTA'S ATTORNEY GENERAL HAS NO PRESENT INTENTION TO ENFORCE THE ACT.

Minnesota's Attorney General is authorized to investigate and enforce "violations of the laws of this state respecting unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn. Stat. § 8.31, subd. 1. Minnesota's Attorney General has also had enforcement authority over Chapter 181 since 2019. Minn. Stat. § 181.1721.

Minnesota's Attorney General has complete prosecutorial discretion over whether and when to pursue such a civil enforcement action. The only time the Attorney General *must* engage in any type of affirmative prosecution is in a specific type of criminal matter not relevant here. *See* Minn. Stat. § 8.01.[5]

---

[5] "Whenever the governor shall so request, in writing, the attorney general shall prosecute any person charged with an indictable offense, and in all such cases may attend upon the grand jury and exercise the powers of a county attorney."

Attorney General Ellison has never enforced or threatened to enforce the Act against Plaintiffs or any other Minnesota employer. *Declaration of Attorney General Keith Ellison* ("*Ellison Decl.*"), ¶¶ 4-5. Since its enactment in 2023, the Attorney General's office has not received any complaints regarding alleged violations of the Act. Id. at ¶ 8. Likewise, Attorney General Ellison is not currently investigating and does not presently intend to investigate Plaintiffs, or any other Minnesota employer, for alleged violations of the Act. Id. at ¶¶ 9-10. Although Attorney General Ellison *could* enforce the Act, its primary enforcement mechanism is through the private right of action. Minn. Stat. § 181.531, subd. 2. Accordingly, Attorney General Ellison has no present intention to enforce or threaten enforcement of the Act against Plaintiffs or any Minnesota employer. *Ellison Decl.*, ¶¶ 6-7.

## STANDARD OF REVIEW

The State Officers move to dismiss Plaintiffs' complaint and assert a factual attack on subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Factual attacks under Rule 12(b)(1) focus on the veracity of the facts underpinning a plaintiff's assertion of subject matter jurisdiction. *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018); *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018); *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 520–21 (8th Cir. 2007).

Unlike other Rule 12 motions, the court does *not* give plaintiffs' allegations or evidence any presumption of truth, and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914–15 (8th Cir. 2015); *Osborn v. United States*, 918 F.2d 724, 729-30, n.6 (8th

Cir. 1990). In a factual attack under Rule 12(b)(1), "the existence of subject matter jurisdiction [is challenged] in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Branson Label, Inc.*, 793 F.3d at 914–15 (citation and quotation marks omitted). "Thus, the nonmoving party would not enjoy the benefit of the allegations in its pleadings being accepted as true by the reviewing court." *Id.*

To defeat a Rule 12(b)(1) factual attack, "the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence." *Moss*, 895 F.3d at 1097 (citation omitted). Thus, it is *Plaintiffs'* burden to prove any exception to the State Officers' claim of Eleventh Amendment sovereign immunity by a preponderance of the evidence. *Moss*, 895 F.3d at 1097.

## ARGUMENT

## I. THIS COURT LACKS SUBJECT-MATTER JURISDICTION.

This Court lacks subject-matter jurisdiction because the State Officers are entitled to sovereign immunity. *Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1043 (8th Cir. 2000) ("[I]mmunity is a jurisdictional question"). "Subject-matter jurisdiction is a threshold requirement which must be assured in every federal case." *Kronholm v. F.D.I.C.*, 915 F.2d 1171, 1174 (8th Cir. 1990).

### A. THE STATE OFFICERS ARE IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT.

"Generally, States are immune from suit under the terms of the Eleventh Amendment and the doctrine of sovereign immunity." *Whole Woman's Health v. Jackson*,

595 U.S. 30, 39 (2021). The Supreme Court has "recognized a narrow exception grounded in traditional equity practice—one that allows certain private parties to seek judicial orders in federal court preventing state executive officials from enforcing state laws that are contrary to federal law." *Id*. (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)).

"In determining whether this exception applies, a court conducts 'a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Minnesota RFL Republican Farmer Lab. Caucus v. Freeman*, 33 F.4th 985, 989–90 (8th Cir. 2022) (citing *281 Care Comm. v. Arneson* (*Care Committee I*), 638 F.3d 621, 632 (8th Cir. 2011)). "The *Ex parte Young* exception only applies against officials 'who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution.'" *Minn. RFL*, 33 F.4th at 990 (citing *281 Care Comm. v. Arneson* (*Care Committee II*), 766 F.3d 774, 797 (8th Cir. 2014)).

Thus, to establish the *Ex parte Young* exception to Defendants' sovereign immunity in the face of a Rule 12(b)(1) factual attack on subject matter jurisdiction, it is Plaintiffs' burden to plead *and* prove each State Officer (1) has "some connection with the enforcement" of the challenged law; and (2) has "*threaten*[*ed*] and [*are*] *about to commence* proceedings" to enforce the statute. *Ex parte Young*, 209 U.S. at 156–57 (emphasis added).

*Ex parte Young*'s first requirement, that a state officer has "some connection" with the enforcement of the challenged law guards against "merely making [the official] a party

as a representative of the state, and thereby attempting to make the state a party," circumventing the Eleventh Amendment. *Id*. at 157. And it requires more than a bare connection to administering a statute. *Ex parte Young* does not reach state officers who lack a "special relation to the particular statute" and are "not expressly directed to see to its enforcement." *Id*. at 157. Even when a state official has authority to enforce a statute, Plaintiffs cannot demonstrate that enforcement is imminent, *Ex parte Young*'s second element, when the state officer disclaims any present intent to exercise that authority. *Minn. RFL*, 33 F.4th at 992.

Plaintiffs cannot establish *Ex parte Young*'s exception for any of the State Officers. Governor Walz lacks any connection to the enforcement of the Act and has not threatened to enforce it. Commissioner Blissenbach lacks a sufficient connection to the enforcement of the Act, and has no present intent to enforce it. Attorney General Ellison has authority to enforce the Act, but has no present intent to do so. Thus, *Ex parte Young*'s exception does not apply, and sovereign immunity bars this action.

## B. GOVERNOR WALZ AND COMMISSIONER BLISSENBACH LACK SUFFICIENT CONNECTION TO THE ACT'S ENFORCEMENT TO MEET *EX PARTE YOUNG*'S FIRST ELEMENT.

*Ex parte Young*'s first element can be met in two ways. A state official's connection with a law's enforcement might be "specially created by the act itself," or it may come from "the general law." 209 U.S. at 157. Plaintiffs cannot prove *Ex parte Young*'s first element for either Governor Walz or Commissioner Blissenbach.

### 1. Governor Walz Has No Specific Or General Authority To Enforce the Act

The Act does not give the Minnesota Governor any specific authority to enforce its provisions. *See generally*, Minn. Stat. § 181.531. Accordingly, Plaintiffs must find the Governor's enforcement authority elsewhere. *Ex parte Young*, 209 U.S. at 157.

### a. Constitutional Duties To "Take Care That The Laws Be Faithfully Executed" Cannot Establish The Required Connection.

Relying on Article V, § 3 of Minnesota's Constitution, Plaintiffs claim Governor Walz's constitutional duty to "take care that the laws be faithfully executed" establishes his connection to enforcing the Act. SAC, ¶ 3. But if that argument were ever true, it has not been since the 19th Century. *Ex parte Young*, 209 U.S. at 156–157 (citing *Fitts v. McGhee*, 172 U.S. 516, 530 (1899) (rejecting theory that governor was proper defendant for challenge to law because they "as the executive of the state, [were], in a general sense, charged with the execution of all its laws.")).

In more contemporary decisions, courts regularly find general constitutional duties to ensure laws are "faithfully enforced" insufficient to connect a Governor to a particular law's enforcement. *Calzone v. Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (finding Missouri Governor's constitutional duty to "take care that the laws are distributed and faithfully executed"[6] insufficient to meet *Ex parte Young*'s first element); *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 960–61 (8th Cir. 2015) (finding Arkansas Governor's constitutional duty to "see that the laws are faithfully executed"[7] insufficient

---

[6] *Compare with* Minn. Const. Art V, § 3.

[7] *Id.*

to meet *Ex parte Young*'s first element); *see also, Jewell v. Herke*, 526 F. Supp. 3d 459, 469 (D. Minn. 2021) (Schiltz, J.) (finding Governor Walz's "general executive authority" insufficient to meet *Ex parte Young*'s first element).

Governor Walz's general constitutional duty to ensure the faithful execution of state law is therefore insufficient to strip his office's Eleventh Amendment sovereign immunity.

### b. An Ability To Appoint State Officers Who Might Enforce The Act Cannot Establish The Required Connection.

Beyond his general executive authority over all state laws, Plaintiffs contend Governor Walz's connection to the Act exists vicariously through his ability to appoint or remove Commissioner Blissenbach who—Plaintiffs allege—has authority to enforce the Act. SAC ¶¶ 30, 37.

Even if Commissioner Blissenbach's own connection to the Act's enforcement were sufficient to make her a proper defendant, Governor Walz's power to appoint the commissioner of an agency charged with carrying out an allegedly unconstitutional law is insufficient to demonstrate that the *Governor*—as opposed to the appointee—has a sufficiently close connection to enforcement of the law to meet *Ex parte Young*'s first element. *Church v. Missouri,* 913 F.3d 736, 753 (8th Cir. 2019) (concluding that the governor is protected by sovereign immunity because his general enforcement authority and appointment authority "do not satisfy *Ex parte Young*"); *Balogh v. Lombardi*, 816 F.3d 536, 546 (8th Cir. 2016) (state officer's power to select members of "the execution team constitutes implementation of the statute in an administrative or ministerial sense and is not analogous to … an enforcement action within the meaning of *Ex parte Young* and its

progeny"); *Sweat v. Hull*, 200 F. Supp. 2d 1162, 1175–76 (D. Ariz. 2001) (dismissing claim against Governor who signed allegedly unconstitutional bill into law and appointed the cabinet official responsible for enforcing that law).

Why Plaintiffs are suing Governor Walz at all is unclear. If Plaintiffs' allegations are correct that Commissioner Blissenbach is a proper defendant for *Ex parte Young* purposes, they could achieve all the remedial relief they seek—a declaratory judgment and injunction—without involving Governor Walz. Indeed, Plaintiffs only sued Governor Walz after Commissioner Blissenbach and Attorney General Ellison disclaimed a present intent to enforce the Act, likely defeating their *Ex parte Young* claims against them. *Blissenbach Decl.*, ¶¶ 6–11; *Ellison Decl.*, ¶¶ 4–10.[8]

Even then, it was only after Governor Walz voiced his enthusiastic support for the Act that Plaintiffs embarked on this effort to haul him into federal court. SAC, ¶ 32; *Plaintiffs' Motion to Amend* (Doc. 28). But the mere "fact that he has publicly endorsed and defended the challenged statutes does not alter our analysis." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001) (reversing district court ruling that governor was proper defendant because he actively and publicly defended the law). "The purpose of allowing suit against state officials to enjoin their enforcement of an unconstitutional statute is not aided by enjoining the actions of a state official not directly involved in enforcing the subject statute." *Id*.

---

[8] *See* Section C(2), *infra*.

If, as Plaintiffs speculate, Governor Walz someday replaces Commissioner Blissenbach with a person who intends to directly enforce the Act, their effort to establish *Ex parte Young*'s exception —*at that time*—may fare better. But that time is not now, and the proper defendant is not Governor Walz.

### c. Governor Walz Lacks Vicarious Enforcement Authority Because He Cannot Direct Attorney General Ellison To Enforce The Act.

Plaintiffs suggest Governor Walz's enforcement authority might be derived vicariously from Attorney General Ellison, who has general enforcement authority over Chapter 181. *Ellison Decl.*, ¶ 3; SAC, ¶ 18. If that connection suffices, Plaintiffs apparently believe a Governor Walz directive to enforce the Act could override Attorney General Ellison's declaration that he has no present intent do so, thereby satisfying *Ex parte Young*'s exception. *Ellison Decl.*, ¶¶ 4–10. But this theoretical chain of events all presupposes a power the Minnesota Governor does not have.[9]

Minnesota's Governor cannot direct the Attorney General to affirmatively enforce the Act because the Attorney General is a separately elected constitutional officer who has independent power to bring actions in the name of the State of Minnesota when and where he chooses. *See Slezak v. Ousdigian*, 260 Minn. 303, 308 (1961), *overruled on other grounds by Christensen v. Minneapolis Mun. Emps. Ret. Bd.*, 331 N.W.2d 740 (Minn. 1983) ("The attorney general['s]…powers are not limited to those granted by statute but include extensive common-law powers inherent in his office…and the courts will not

---

[9] Plaintiffs offer no evidence that such a directive has been given or threatened.

control the discretionary power of the attorney general in conducting litigation for the state.”). And the Attorney General’s “discretion as to what litigation shall or shall not be instituted by him is beyond the control of any other officer or department of the state.” *State ex rel. Peterson v. City of Fraser*, 191 Minn. 427, 431 (1934). Accordingly, Governor Walz cannot order Attorney General Ellison to enforce the Act, and therefore lacks vicarious authority to enforce the Act.

Plaintiffs cannot prove a sufficient connection between Governor Walz and the Act’s enforcement to establish *Ex parte Young*’s first element. Accordingly, they cannot establish the *Ex parte Young* exception to the Eleventh Amendment and all claims against Governor Walz must be dismissed.

### 2. Commissioner Blissenbach Lacks a Sufficient Connection to Enforcement of the Act.

Commissioner Blissenbach does not enforce the Act in a manner that satisfies the first element of *Ex parte Young*. Commissioner Blissenbach has general authority to investigate potential violations of law in Chapter 181, which includes the Act. *See* Minn. Stat. § 175.20 (granting DLI’s commissioner general investigative authority across Minnesota statutes chapters 175, 177, 181, 181A, and 184). But Minnesota law does not allow Commissioner Blissenbach to initiate state action to enforce it. Minn. Stat. § 177.27, subds. 4–5 (cataloguing the sections of Chapters 177, 179, 181, and 268B where the DLI’s commissioner may issue compliance orders or bring actions, *excluding* Section 181.531).

The Act itself only references DLI’s commissioner in its newly amended section requiring her to create a workplace “know your rights” poster. *See* Act of May 17, 2024,

Reg. Sess., ch. 110, § 3. But this provision does not provide DLI's commissioner with any new enforcement authority; it simply requires DLI to prepare a notice to educate employers and employees about the Act. Whether and when the Act is enforced through its private right of action remains unchanged.

Courts have repeatedly held that a state official's general enforcement authority over an allegedly unconstitutional law is insufficient to justify an *Ex parte Young* exception. *See Advanced Auto Transp., Inc. v. Pawlenty*, Civ. No. 10-159 (DWF/AJB), 2010 WL 2265159, at *3 (D. Minn. June 2, 2010) (finding Governor's general enforcement authority of Minnesota's laws was an insufficient connection to a provision of Minnesota Unemployment Insurance Law to lose his sovereign immunity); *see also Minn. Citizens Concerned for Life, Inc., v. Swanson*, Civ. No. 10-2938 (DWF/JSM), 2011 WL 797462, at *3 (D. Minn. Mar. 1, 2011) ("[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law.") (citation omitted).

Because Commissioner Blissenbach lacks a statutory mechanism to enforce the Act, she cannot "commence proceedings" required to establish *Ex parte Young*'s connection-with-enforcement element. 209 U.S. at 156. Therefore, Plaintiffs cannot establish *Ex parte Young*'s exception to Commissioner Blissenbach's sovereign immunity, and this complaint must be dismissed.[10]

---

[10] Defendants do not believe that this Court needs to answer this question because Commissioner Blissenbach disclaimed any present intent to investigate or otherwise enforce the Act against Plaintiffs or any Minnesota employer. *See* Section C(2), *infra*.

## C. The State Officers Have Not Threatened to Enforce the Act And Have No Present Intent to Enforce the Act.

Even if Plaintiffs prove its first element, the *Ex parte Young* exception does not apply "when the defendant official has neither enforced nor threatened to enforce the statute challenged as unconstitutional," because the imminent-enforcement requirement is not satisfied. *Care Committee II*, 766 F.3d at 797 (citation omitted). Merely possessing authority to enforce a law is not enough because "conjectural injury cannot warrant equitable relief." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382 (1992). The about-to-commence-proceedings requirement prevents federal courts from having "to determine the constitutionality of state laws in hypothetical situations where it is not even clear the State itself would consider its law applicable." *Id.*; *see also Minn. RFL Repub. Farmer Labor Caucus v. Freeman*, 486 F Supp. 3d 1300, 1310 (D. Minn. 2020) ("[T]he Eighth Circuit applies an imminence standard that is higher for *Ex parte Young* claims than for Article III standing.").

Plaintiffs may reiterate their argument that the Supreme Court's opinion in *Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021) eliminated *Ex parte Young*'s imminent-enforcement requirement. But if there was any question about the continued vitality of *Ex parte Young*'s century-old second element, the Eighth Circuit put that notion to rest a year later. "'*Ex parte Young* doctrine does not apply when the defendant official has *neither enforced nor threatened to enforce* the statute challenged as unconstitutional.'" *Freeman*, 33 F.4th at 992 (quoting *Care Committee II*, 766 F.3d at 797 (emphasis in original)), *cert denied sub nom. Christian Action League of Minn. v. Freeman*, 143 S. Ct. 304 (2022).

The State Officers in this case are all protected by sovereign immunity because they have not enforced and have no present intent to enforce the Act and Plaintiffs offer no evidence to prove their burden to prove a threat of enforcement. Because this evidence does not exist, *Ex parte Young*'s exception does not apply. Accordingly, sovereign immunity deprives this Court of subject matter jurisdiction.

### 1. Governor Walz Has Not Threatened to Enforce The Act and Has Not Directed Commissioner Blissenbach To Enforce The Act.

Plaintiffs' entire theory for suing Governor Walz rests on two sentences of a speech he gave to a crowd of union supporters: "*Minnesota was going to ban that practice, of having those captive anti-union meetings. You go to jail now if you do that in Minnesota because you can't intimidate people.*" SAC, ¶¶ 32, Ex. A. Governor Walz's enthusiasm for the Act and his mistaken statement of the legal consequences for its violators cannot strip his office of sovereign immunity provided by the U.S. Constitution.

Even when a governor advocates for a law and urges that it "be vigorously enforced … [t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 901 (4th Cir. 2022). The statement by Governor Walz does not come close to urging "vigorous enforcement," but even if it did it would not matter because he lacks any ability to enforce the Act.

Beyond Governor Walz's advocacy for the Act in general, Plaintiffs present no evidence that he has threatened to enforce the Act against them and the procedural posture of this motion is dispositive. In this Rule 12(b)(1) factual attack, Plaintiffs' allegations are

not presumed true and there are no inferences drawn in their favor because "the non-moving party does not have the benefit of 12(b)(6) safeguards." *Osborn*, 918 F.2d at 729 n.6 (internal citation omitted). Governor Walz's two statements evince one benign message: Minnesota was going to pass a law and it did so.

As a matter of undisputed fact, Governor Walz has never directed Commissioner Blissenbach to enforce the Act. *Blissenbach Supp. Decl*., ¶ 4. Moreover, Plaintiffs offer no evidence that Governor Walz has ordered Attorney General Ellison to enforce the Act, which he has no legal authority to do anyway. *City of Fraser*, 191 Minn. at 431. Plaintiffs have no other evidence showing that Governor Walz actually threatened to enforce the Act against them, or otherwise any other State Officer to do so. Accordingly, Plaintiffs cannot meet *Ex parte Young*'s second element as to Governor Walz.

### 2. Commissioner Blissenbach Has Not Threatened to Enforce the Act, and Still Has No Present Intent To Enforce It.

Plaintiffs fail to present any evidence that Commissioner Blissenbach has any present intent to enforce the Act. In the time since Commissioner Blissenbach first disclaimed a present intent to enforce the Act, two events occurred that Plaintiffs contend doubts the continued veracity of her testimony. First, Governor Walz touted passage of the Act to a meeting of union members. *See* SAC ¶¶ 32–37. Second, the Minnesota Legislature amended the Act to require DLI's commissioner to create an educational poster about the Act. *See* Act of May 17, 2024, Reg. Sess., ch. 110, § 3. Nevertheless, Commissioner Blissenbach continues to refute any present intent to commence an investigation or enforcement action under the Act against Plaintiffs or any Minnesota Employer.

*Blissenbach Supp. Decl.*, ¶ 4,7-11. Accordingly, Plaintiffs cannot prove *Ex parte Young*'s

second element as to Commissioner Blissenbach and this narrow exception to sovereign

immunity does not apply.

### 3. Attorney General Ellison Has Not Threatened to Enforce the Act, and Has No Present Intent To Do So.

Plaintiffs cannot sue Attorney General Ellison because they fail to even allege,

much less prove, that he has threatened, commenced, or is about to commence proceedings

under the Act. Therefore, Plaintiffs cannot establish *Ex parte Young*'s exception to

Attorney General Ellison's sovereign immunity.

Plaintiffs cannot dispute that Attorney General Ellison has never enforced or

threatened to enforce the Act. *Ellison Decl*., ¶¶ 4-5. Plaintiffs cannot dispute that Attorney

General Ellison has not investigated and has no present intent to investigate alleged

violations of the Act and has no present intention to enforce the Act against Plaintiffs.

*Ellison Decl.*, ¶¶ 6–10. Evidence to the contrary simply does not exist.

Courts repeatedly dismiss claims like Plaintiffs' on Eleventh Amendment grounds.

*See Greene v. Dayton*, 81 F. Supp. 3d 747, 752 (D. Minn. 2015) (dismissing claims against

the Governor and state commissioners "because the Plaintiffs have failed to allege that the

State Defendants have threatened or are about to commence proceedings against Plaintiffs

or anyone else under the state statute"); *North Dakota v. Swanson*, Civ. No. 11–3232

(SRN/SER), 2012 WL 4479246, at *18–19 (D. Minn. Sept. 30, 2012) ("Attorney General

Swanson is immune from this suit under the Eleventh Amendment. Plaintiffs do not allege

that Attorney General Swanson has threatened a suit or is about to commence proceedings

against them or anyone else under" the challenged law.); *Advanced Auto Transport, Inc., Inc.*, 2010 WL 2265159, at *3 (finding the Attorney General and Governor immune from suit because the plaintiff does not allege that they "threatened a suit or are about to commence proceedings").

Plaintiffs cannot establish the *Ex parte Young* exception because Attorney General Ellison has not threatened to enforce the Act, and has no present intent to do so. Accordingly, Attorney General Ellison's sovereign immunity deprives this Court of subject matter jurisdiction to hear this case.

## CONCLUSION

In a factual attack on this Court's subject matter jurisdiction, Plaintiffs' allegations are not presumed true, no inferences are drawn in their favor, and *they* bear the burden of establishing jurisdiction by a preponderance of the evidence. They fail to meet this burden. The State Officials have not threatened and are not about to commence enforcement proceedings against Plaintiffs or any employer under the Act. The State Officials' declarations elevate this from mere inference to uncontroverted fact. Accordingly, the State Officers' sovereign immunity deprives this Court of subject matter jurisdiction and Plaintiffs Second Amended Complaint must be dismissed.

Dated:  June 21, 2024                    Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

/s/  Nick Pladson
NICK PLADSON
Assistant Attorney General
Atty. Reg. No. 0388148
BENJAMIN HARRINGA
Assistant Attorney General
Atty. Reg. No. 0399254

445 Minnesota Street, Suite 1400
St. Paul, Minnesota 55101-2131
(651) 300-7083 (Voice)
(651) 296-7438 (Fax)
Nick.Pladson@ag.state.mn.us

ATTORNEYS FOR DEFENDANTS